Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Russell, S.J.

DEBRA KEENER

v.  Record No. 082280

HOLLIS GRANT KEENER, JR., ET AL.

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
September 18, 2009

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
William D. Hamblen, Judge

This appeal presents a question of first impression, involving the construction and effect of a forfeiture clause contained in an inter vivos trust. The trust itself was the sole beneficiary under a will.

Facts and Proceedings

Hollis Grant Keener (the testator), a widower residing in Prince William County, died on August 7, 2007, survived by his seven children, Hollis G. Keener, Jr. (Hollis), Thomas C. Keener (Thomas), Brenda Anne Collier (Brenda), Deborah Louise Keener (Debra),[1] Robin Wanda Peer (Robin), Joyce Sue Purks (Joyce), and Clark Allen Keener (Clark). More than four years before his death, the testator consulted an attorney specializing in estate planning, who prepared a "pour-over" will that left all the testator's property to the "Hollis Grant Keener Revocable Living Trust" (the trust). The will

_____

[1] The testator spelled this daughter's name "Deborah" in his will and trust. She, however, used the spelling "Debra" throughout this litigation.

named the testator's eldest son, Hollis, as executor.  The will and the trust were both executed on February 1, 2003.

The trust was to become effective immediately.  It designated the testator as sole trustee during his lifetime, with his son Hollis as first successor trustee and his son Thomas as second successor trustee.  The trust instrument described its purpose:

> The purpose of this Trust is to reduce or eliminate probate costs to the extent possible while maintaining complete control of my assets.  I wish to also ultimately distribute my estate to members of my family in a prompt, orderly and private manner.

> Specifically, I wish to provide for my support, comfort and well-being while I am alive and then to pass along my estate to my children, HOLLIS GRANT KEENER, JR., THOMAS C. KEENER, BRENDA ANNE COLLIER, DEBORAH LOUISE KEENER, ROBIN WANDA PEER, JOYCE SUE PURKS, AND CLARK ALLEN KEENER, if living.

The trust provided that if all of the testator's children should survive him, the trust would terminate at his death and all its assets would be distributed to them in equal shares, "[e]xcept as may be provided by an addendum to this Trust." On the same date the testator executed his will and trust, he also executed four addenda to the trust.  The first of these specified the powers of the trustee, the second transferred all the testator's personal property to the trust, except for items requiring a certificate of title, the third transferred the testator's automobile to Hollis at the time of the

testator's death, and the fourth provided that the shares of Robin and Clark should not be distributed to them upon the testator's death, but were to continue to be held in trust for them during their lifetimes.  The trustee was given power to distribute principal and interest to those children from their shares, in his sole discretion, for their health care, education, support and maintenance.

In 2005, the testator executed a fifth addendum[2] providing that upon his death, Clark's share and Robin's share would be first applied to the repayment of certain bank loans made to them before they received any distribution from the trust, and that Joyce's share would be first applied to the repayment of a loan the testator had made to her before she received any distribution from the trust.

In early March 2007, Hollis, who lived in Delaware, visited his father, who was then living with Brenda and her husband in their home in Manassas.  When Hollis arrived, he found Debra engaged in an argument with Brenda.  In the presence of their father, Debra was examining a portfolio of papers containing their father's will and trust documents. She left the house with these papers, had copies made of them, and returned the original papers.  The children's testimony as

---

[2] It was erroneously captioned "Addendum Four."

3

to the details of their dispute varied, but the disagreements among them became so heated that by the time of their father's death five months later, Debra was on speaking terms with only one of her siblings.

Within a few weeks after this unpleasantness, the testator executed a final addendum to his trust that provided:

> At my death:
> 1.  Any person that objects to or contests any provision of this Trust, in whole or in part, shall forfeit his or her entire distribution otherwise payable under this Trust and receive only $1.00 under this Trust and will receive no other distribution from my Trust nor from my estate.

This language was confined to the trust; the testator's will did not contain a forfeiture or no-contest provision.

At the time of the testator's death, the original will was in Hollis' possession in Delaware.  He did not offer it for probate because he thought probate was unnecessary, explaining that "the Will was referring everything to the Trust."  He told his siblings that "there really was no Will" and that the will "referred everything to the Trust."  He later testified that he thought "[t]he only thing I was going to do was get the money, disburse it, call it a day, and I was done."

Debra went to the clerk's office of the Circuit Court of Prince William County to ascertain whether her father's will had been offered for probate.  Finding no such record, she

attempted to offer for probate the copy of the will she had made in March, but was informed that the original will was necessary. Debra had no communications with Hollis, but she later testified that Brenda and Thomas both told her that "[t]here is no Will."

On October 15, 2007, Debra applied to the clerk of the circuit court for administration of her father's estate, making oath that he had died intestate. The clerk entered an order appointing her administratrix and authorizing issuance of letters of administration to her.

On October 18, 2007, Hollis sent a memorandum to his six siblings making a partial disbursement to them of the funds in the trust. In accordance with the addenda to the trust, he deducted from the checks sent to Joyce and Clark the loans the testator had mentioned. Learning of Debra's qualification as administratrix before her check had cleared the bank, Hollis stopped payment on it on the ground that she had forfeited her entire interest in the trust by violating the no-contest provision in the last addendum to the trust.

Hollis, Thomas and Brenda (the petitioners) brought this suit by filing a petition in the circuit court exhibiting the testator's original will and asking for its admission to probate. The petition named the remaining four children as defendants and asked the court to remove Debra as

administratrix and to appoint Hollis as personal representative of the estate. The petitioners alleged that Debra's acts amounted to a contest of the provisions of the trust. Debra filed an answer in which she stated that if a properly executed original will were produced, she would have no objection to its admission to probate and would "cooperate in correcting the probate records" to change the fiduciary in accordance with the provisions of the will.

Debra's answer was accompanied by a counterclaim alleging that Hollis and Thomas had breached their fiduciary duties as successor co-trustees under the trust by wasting trust assets, concealing assets from some beneficiaries while favoring others, and failing to account for their acts. She asked the court to order them to make full disclosure of the facts, to render an accounting and to reimburse the trust for all costs, waste and damages the court might find that the trust had incurred.

Debra later filed an amended counterclaim alleging additional wrongful acts committed by Hollis and Thomas and asking for their removal as co-trustees or, alternatively, for subjecting them to the supervision of the commissioner of accounts. The petitioners answered, accusing Debra of fraud, perjury, unclean hands, and estoppel by her "wrongful conduct"

6

in incurring the expense of litigation by opening administration of the estate as intestate.[3]

After hearing the evidence ore tenus, the circuit court ruled that the will would be admitted to probate by agreement of all the parties, which would have the effect of terminating the authority of Debra to act as administratrix. The court denied the petitioners' request for attorney's fees but otherwise substantially granted the relief asked by the petitioners.[4]

Turning to Debra's counterclaim and affirmative defenses, the court ruled that her action in qualifying as administratrix was, in effect, a contest of all the provisions of the trust because, if it had been successful, it would have resulted in the distribution of all assets remaining in the testator's ownership at the time of his death directly to his statutory heirs at law, and not to the trust as provided for

---

[3] Although Debra's counterclaim may be said to have contested the trust's provisions by demanding the removal of Hollis and Thomas as co-trustees, the petitioners never argued that point at trial and that issue cannot be raised for the first time on appeal. Furthermore, the petitioners did not present that issue by an assignment of cross-error, and it is thus not before us. Rule 5:18(b).

[4] Because the petitioners assigned no cross-error to the court's ruling respecting attorney's fees, that issue is not before us. Rule 5:18(b).

in his will.[5]  The court ruled that Debra's conduct triggered the forfeiture clause in the final addendum to the trust, that she had thereby forfeited her interest and therefore had no standing to assert any claim against the trustees.  The court entered a final order dismissing Debra's counterclaim, admitting the will to probate, appointing Thomas as personal representative of the testator's estate[6] and dismissing the case with prejudice.  We awarded Debra an appeal.

## Analysis

The question whether a no-contest clause in a will has been triggered presents, on appellate review, a mixed question of law and fact.  "What activity or participation constitutes a contest or attempt to defeat a will depends upon the wording of the 'no contest' provision and the facts and circumstances of each particular case."  Womble v. Gunter, 198 Va. 522, 529, 95 S.E.2d 213, 219 (1956).  Accordingly, we accord deference to the circuit court's findings of historical fact, but review questions of law de novo.  Luria v. Board of Dirs. of Westbriar Condo. Unit Owners Ass'n, 277 Va. 359, 365, 672 S.E.2d 837, 840 (2009).  In the present case, although many

---

[5] It was undisputed that, although the testator had transferred many of his assets to the trust during his lifetime, assets not yet transferred still remained in his name at the time of his death.

[6] Hollis had declined to serve.

8

facts are in dispute, none that are material to this appeal are disputed.  It is not disputed that Debra opened administration of her father's estate as intestate.  The only question presented on appeal is whether that act triggered the no-contest clause in the trust.  That question involves applying the language of a written document to an undisputed fact, which we treat as a pure question of law, subject to review de novo on appeal.  Jones v. Brandt, 274 Va. 131, 135, 645 S.E.2d 312, 314 (2007).

In Womble, after reviewing decisions from many jurisdictions, we decided to adopt the rule that a no-contest provision in a will should be strictly enforced according to its terms, even, in that case, against infants who were parties to the contest and even, in that case, where the application of the clause had the effect of disinheriting all the members of the testator's family.  Womble, 198 Va. at 532, 95 S.E.2d at 220-21.  The compelling reasons for such strict enforcement of the testator's language are the protection of a testator's right to dispose of his property as he sees fit, and the societal benefit of deterring the bitter family disputes that will contests frequently engender.  Id. at 526-27, 532, 95 S.E.2d at 217, 220-21.

A preliminary question, of first impression in Virginia, is whether the same principles we apply to a no-contest clause

9

in a will should apply with equal force to such language appearing in a trust that constitutes a part of a decedent's testamentary estate plan.  In the present case, the sole purpose of the testator's will was to fund the trust.  The trust expressed his entire plan for the distribution of his property after his death.  If the trust had not been in effect, there would have been no reason to offer the will for probate.  Although the terms of the trust originally contemplated that it would terminate upon the testator's death, resulting in a prompt equal distribution of his property to his children, addenda the testator created during his lifetime extended the trust's operation into the indefinite future.  Because the testator relied on the trust for the disposition of his property, we consider it appropriate to give full effect to no-contest provisions in such trusts for the same reasons that support the enforcement of such provisions when they appear in wills.

We now turn to the dispositive issue on appeal:  Whether Debra's acts in opening intestate administration of her father's estate triggered the no-contest provisions of the trust.  No-contest provisions are strictly construed for two reasons.  First, the testator, or a skilled draftsman acting at his direction, has the opportunity to select the language that will most precisely express the testator's intent.  See

<u>Womble</u>, 198 Va. at 531-32, 95 S.E.2d at 220-21.  Second, provisions that work a forfeiture are not favored in the law generally and will not be enforced except according to their clear terms.  See <u>Trailsend Land Co. v. Virginia Holding Corp.</u>, 228 Va. 319, 323-24, 321 S.E.2d 667, 669 (1984).

Applying those principles, we conclude that Debra's acts did not bring her within the trust's language:  "Any person that objects to or contests any provision of this Trust, in whole or in part, shall forfeit his or her entire distribution . . . ."  With the exception of her request for the removal of trustees, an issue not presented on appeal, Debra made no objection to, or contest of, any provision of the trust.  The circuit court questioned whether she had reason to believe there was an unrevoked original will in existence when she acted to open administration of the estate, but the court made no express finding on that subject.  It sufficed for the court that Debra's action, if successful, would have thwarted the testator's purpose of funding the trust through the will. That purpose, however, was not a provision of the trust and the will contained no forfeiture provision.  The testator could, if he so desired, have included, either in his will or in the trust, language broad enough to include the acts complained of by the petitioners, but did not choose to do so.

## Conclusion

We conclude that the circuit court erred in holding that Debra's act in opening administration of the estate brought her within the forfeiture clause of the trust, and that she therefore lacked standing to pursue the claims asserted in her amended counterclaim.  Accordingly, we will reverse the judgment of the circuit court and remand the case for further proceedings with respect to the said counterclaim, consistent with this opinion.

Reversed and remanded.
