# CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of
Dorsey W. Rohrbaugh

March 31, 2010

Case Nos. FI 2002-68397, CL 2009-16701

BY JUDGE STANLEY P. KLEIN

The parties came before the Court on December 4, 2009, and March 11, 2010, on remand from the Supreme Court of Virginia, which set aside this Court's previous order on the ground that the evidence in the record did not support the decision. Upon remand, the parties stipulated that the Estate of Dorsey W. Rohrbaugh and its Executors' previous Motion to Construe Will, filed in this Court on April 8, 2005, shall provide the mechanism through which they would jointly seek a judicial determination of the remaining issues involved in this case. The issue before this Court is whether Mrs. Rohrbaugh, by filing and pursuing two previous lawsuits against the Estate of Dorsey W. Rohrbaugh ("Estate"), invoked the no-contest provision of Dorsey W. Rohrbaugh's ("Mr. Rohrbaugh") will in light of all the factual circumstances of this case, including her intent in bringing the previous lawsuits. The Court has fully considered the applicable governing authorities, the relevant evidence, and the arguments presented both orally and in writing. For the reasons set forth herein, the Court now holds that Mrs. Rohrbaugh invoked the no-contest clause of Mr. Rohrbaugh's will and is, therefore, entitled to only $100.00 pursuant to that clause.

*I. Background*

The findings of fact herein are based on the parties' Joint Stipulation filed December 23, 2009, which provides that the Court shall admit into evidence, for the purpose of Ms. Rohrbaugh's Motion to Construe Will, Exhibits 1 through 25 submitted by Mrs. Rohrbaugh, and Exhibits A through M submitted by the Executors and the Estate. The Joint Stipulation further provides that the Court shall take judicial notice of this Court's files in the cases of *Geanie L. Rohrbaugh v. Terry R. Rohrbaugh et al.*, Chancery No. 179251, and *Geanie L. Rohrbaugh v. Terry R. Rohrbaugh et al.*, Law No. 226919. The admitted evidence includes, but is not limited to Last Will and Testament of Mr. Rohrbaugh, dated January 3, 1994 (Exhibits 3 and G); Antenuptial Agreement dated April 9, 1974 (Exhibits 2 and A); Bill of Complaint filed July 11, 2002 (Exhibits 1 and C); Motion for Judgment filed November 5, 2004 (Exhibits 13 and E); and Transcript of Proceedings before the Hon. Jane Marum Roush, heard October 26, 2005 (Exhibit J).

Mr. and Mrs. Rohrbaugh married on April 18, 1974, and Mr. Rohrbaugh passed away on January 12, 2002. Since Mr. Rohrbaugh's death, his two sons from a previous marriage, Terry R. Rohrbaugh ("Terry Rohrbaugh") and Dorsey A. Rohrbaugh ("Sonny Rohrbaugh") have served as executors of the Estate (collectively, the "Executors"). Mrs. Rohrbaugh, Terry Rohrbaugh, Sonny Rohrbaugh, and Mr. Rohrbaugh's two daughters, also from a previous marriage, are the principal beneficiaries of the Last Will and Testament of Dorsey W. Rohrbaugh, dated January 3, 1994 ("Will").

Mr. Rohrbaugh's Will was admitted to probate on January 22, 2002. According to an Inventory filed by the Executors on May 15, 2002, the Estate had a value of approximately $2,127,000.00. The litigation surrounding the administration of the Estate has included two separate lawsuits, the present adversary probate proceeding, and multiple appeals and cross-appeals to the Supreme Court of Virginia. The resolution of the present proceeding and Motion to Construe Will, filed by the Executors and Estate, requires an evaluation of an antenuptial agreement, the Will, and the two lawsuits.

A. *Antenuptial Agreement*

Before their marriage, Mr. and Mrs. Rohrbaugh executed an antenuptial agreement dated April 9, 1974 ("Antenuptial Agreement").

Before signing the agreement, Mrs. Rohrbaugh alleges that Mr. Rohrbaugh and his attorney, who drafted the agreement, assured her that all after-acquired property would be "theirs." The Antenuptial Agreement contains the following pertinent provisions:

> 2. ... Geanie L. Lyons agrees ... that her claim upon the estate of Dorsey W. Rohrbaugh shall be limited only to such property which is not enumerated and not set forth on Schedule "A" attached. ... [A]ll property, real, personal or mixed which the parties may accumulate after the marriage, singly or together over and above the estate set forth in Schedule "A" ... shall be in full payment for all claims and demands of every kind and character which the said Geanie L. Lyons shall be entitled to as the wife or widow of said Dorsey W. Rohrbaugh against his said estate. This later interest in such estate to be [sic] a satisfaction of all claims for dower, statutory right, right of support, right of inheritance, and homestead right, and every claim of every kind or character. . . .
>
> 6. It is specifically acknowledged and agreed by Geanie L. Lyons that any and all property which is or may be acquired or purchased with the proceeds of any sale, pay-off, or exchange of the property or assets set forth, in the Schedule "A" attached, shall ... become a part of such schedule ... free from any claim or demand which she could or may have against the estate of Dorsey W. Rohrbaugh.
>
> 7. Each of the parties waives and releases any rights as surviving spouse to elect to take against the other's will.

Schedule A, appended to the Antenuptial Agreement and initialed by Mr. and Mrs. Rohrbaugh, lists various items of real and personal property, including a house and lot located at 1304 and 1306 East Muriel Street, Orlando, Florida ("Orlando Property"). In addition to placing their initials at the bottom of Appendix A, which consists of one page, Mr. and Mrs. Rohrbaugh also specifically initialed the space next to the description of the Orlando Property, with an arrow connecting their initials and that description. Mr. and Mrs. Rohrbaugh thus agreed that (1) in satisfaction of any other claim she may have against the Estate, Mrs. Rohrbaugh could *not* claim any interest in property set forth in Schedule A (including the Orlando Property), *or* after-acquired property purchased with the proceeds

of any sale of property enumerated in Schedule A; and (2) they mutually waived their statutory rights of election.

## B. *Will*

Under Paragraph 3 of the Will, Mr. Rohrbaugh devised his right, title, and interest in the Orlando Property to Mrs. Rohrbaugh. Under the same Paragraph, he also transferred the marital home at 725 Springvale Road, Great Falls, Virginia ("Great Falls Property"), or the net proceeds from the sale of such property, to a "Q-TIP Trust" for the benefit of Mrs. Rohrbaugh during her lifetime. In Paragraph 3.2 of the Will, Mr. Rohrbaugh devised to Terry and Sonny Rohrbaugh, as the Trustees named in Paragraph 12 ("Trustees"), his right, title, and interest in the Great Falls Property, or the net proceeds from the sale of such property if sold by the Estate, to hold in trust subject to the terms and conditions of Paragraph 6. Paragraph 6, which provides for the administration and termination of a Marital Deduction/Q-TIP Trust, directs the Trustees to "hold, manage, invest, and reinvest the principal of [the] trust ... collect the income therefrom, and ... pay all such net income to or for the benefit of [Mrs. Rohrbaugh] during her lifetime." This provision also granted the Trustees "sole and absolute discretion" to distribute to Mrs. Rohrbaugh up to $7,500 of the trust principal per year. Apart from an interest in the Orlando Property and in the net income generated from the sale of the Great Falls Property, the Will bequeathed no other property to Mrs. Rohrbaugh, and left the residuary of the Estate to Mr. Rohrbaugh's four children. Subsequent to his execution of the Will, however, Mr. Rohrbaugh sold the Orlando Property, and, allegedly, purchased with its proceeds real property located at 1149 North Timucuan Trail, Inverness, Florida ("Inverness Property").

The current Motion to Construe Will is governed by the no-contest clause of the Will, which provides, in full:

> 14.3. *Contests to Will.* To the extent permitted by law, it is my intention, and I hereby direct, that any person who contests this Will or any provision hereof, claims against this Will or fails to dismiss any such contest or claim, shall *ipso facto* forfeit any rights, titles, or interest such person has or may at any time have under this Will and/or in any property distributable hereunder, except for the sum of One Hundred Dollars ($100).

In other words, if any beneficiary "contests" the Will, that person forfeits any interest he or she otherwise had under the Will, except for $100.00.

## C. *Original Lawsuit*

On July 12, 2002, Mrs. Rohrbaugh filed a twelve count Bill of Complaint against the Executors and the Estate ("Original Lawsuit") setting out the following causes of action: (I) Declaratory Judgment Voiding Antenuptial Agreement; (II) Breach of Contract (Antenuptial Agreement); (III) Enforcement of Claim to an Elective Share; (IV) Enforcement of Claim for Family Allowance; (V) Enforcement of Claim for Exempt Property Allowance; (VI) Enforcement of Claim for Homestead Allowance; (VII) Valuation of the Augmented Estate; (VIII) Declaratory Judgment of Rights to the Family Abode; (IX) Declaratory Judgment of Rights to the Florida Property; (X) Declaratory Judgment of Rights to the Personal Property in the Great Falls Property; (XI) Declaratory Judgment of Rights to the Personal Property in the Florida Property; and (XII) Accounting. Under Counts II and IX, Mrs. Rohrbaugh alleged that, when Mr. Rohrbaugh sold the Orlando Property and purchased the Inverness Property with its proceeds, he orally promised Mrs. Rohrbaugh that he would convey the Inverness Property to her upon his death.

Mrs. Rohrbaugh nonsuited Counts II, VIII, IX, X, XI, and XII. Judge Dennis J. Smith subsequently entered a final order on June 28, 2004, holding, *inter alia*, that Mrs. Rohrbaugh was barred by the doctrine of laches from challenging the validity of the Antenuptial Agreement and was further barred by the Antenuptial Agreement from seeking a determination of the augmented estate value or from claiming an elective share, family allowance, exempt property allowance, or homestead allowance. The parties' cross-appeals to the Supreme Court were denied. The Executors and the Estate appealed this Court's ruling that they lacked standing to challenge the validity of a Florida decree that divorced Mrs. Rohrbaugh from her previous husband.

## D. *Subsequent Lawsuit*

Subsequently, on November 5, 2004, Mrs. Rohrbaugh filed a Motion for Judgment against the Executors and the Estate ("Subsequent Lawsuit") for about $2,100,000, alleging a claim for conversion of personal property located in the Great Falls and Inverness Properties, and

re-alleging her breach of contract claims. Specifically, she alleged that (1) Mr. Rohrbaugh breached the terms and conditions of the Antenuptial Agreement and subsequent oral agreements by failing to leave her, by the time of his death, all property that he had acquired after the execution of the Antenuptial Agreement; (2) Mr. Rohrbaugh breached an oral agreement to convey the Inverness Property to her upon his death, which he made in consideration for her executing a deed with respect to the Orlando Property;[1] and (3) the Executors wrongfully misappropriated numerous items of personal property that were located in the Great Falls and Inverness Properties at the time of Mr. Rohrbaugh's death.

From October 24 to 26, 2005, Judge Jane Marum Roush presided over a jury trial on the Subsequent Lawsuit. On October 26, 2005, on cross-examination conducted by Rodney G. Leffler, former counsel for the Executors and the Estate, Mrs. Rohrbaugh testified as follows:

Q. Well, let me narrow it down for you. Had you taken what your late husband left you, none of that [referring to the first lawsuit] would have happened. Right?

A. *Well, had he made a will where my stepsons was* [sic] *not controlling what I should have gotten anyway, I wouldn't have — I wouldn't have contested the will to start with.*

Q. So that's a good way to end. You just flat-out disagree with the will he left, don't you?

A. No.

Q. No?

A. Not all of it.

Q. Well, if not —

---

[1] There is no evidence before the Court with respect to the existence or contents of this alleged deed.

A. But I do not agree with the way he worded it. I do not agree with — with what he put in it because it is very — *I thought it was a will from hell.*

Q. All right. And would you agree with me that the part that you most disagree with was the no-contest clause which has caused you to lose everything under it?

A. *I cannot be under the domination of those two boys for the rest of my life.*

Q. So is this the answer to my question, that's the part you most disagree with?

A. Yes:

Q. Because that is why you contest it? When you contested it, Mrs. Rohrbaugh —

A. *That is really why I contested it.*

Q. *When you contested it, of course you knew that if you gambled and were wrong, you'd take nothing from it.*

A. *Well, at least I would have the peace of mind knowing that I would not be under their domination for the rest of my life,* because just before my husband died, Terry Rohrbaugh — He wanted a hearing aid and I had taken him to Inverness, Florida, hearing aid —

Q. I am sorry to interrupt you. Let me just ask you this. *What you repudiated that you refer to as their domination was that you would have a life estate in whatever money came out of the house in Great Falls. Right?*

A. No, that's not what was — that was not my understanding with my husband.

Q. No, no. I am talking about what the will said.

*A. I am talking about what the will - yeah, it did not give me what my husband had promised me.*

*Q. And you therefore repudiated it. Correct?*

*A. Yes, I did.*

*Q. Knowing that there was a clause in it that would penalize you severely if you were wrong. Correct?*

*A. Yes.*

Ex. J. (Trial Tr. 714-16, Oct. 26, 2005) (emphasis added). At the conclusion of the trial, the jury returned a verdict in favor of Mrs. Rohrbaugh on her claim for conversion, awarding $7,140 of the $100,000 of damages sought, but ruled in favor of the Estate and Executors on the breach of contract claims.

E. *Motion to Construe Will*

On April 8, 2005, during the pendency of the Subsequent Lawsuit, the Executors filed a Motion to Construe Will, alleging that Mrs. Rohrbaugh invoked the no-contest clause by pursuing both the Original Lawsuit and Subsequent Lawsuit against the Estate. Accordingly, they argued, she was only entitled to $100.00 under the Will.

On May 13, 2005, prior to Judge Roush's trial on the Subsequent Lawsuit, Judge M. Langhorne Keith held that Mrs. Rohrbaugh had invoked the no-contest clause by pursuing the Subsequent Lawsuit and consequently found that her entitlement under the Will was only $100.00. Judge Keith reasoned that by litigating the alleged breach of the Antenuptial Agreement, Mrs. Rohrbaugh was seeking more than what the Will provided to her. On the other hand, Judge Keith also found that Mrs. Rohrbaugh had *not* invoked the no-contest clause by pursuing the election claims, because public policy prevents a testator from precluding someone from seeking their statutory share.

This Court closed the Estate on August 30, 2007, and on March 27, 2008, this Court entered a Final Order approving the Estate's accounting

and closed out the probate proceeding. After two premature appeals,[2] Mrs. Rohrbaugh filed her Notice of Appeal with respect to Judge Keith's ruling on April 14, 2008.

The Supreme Court of Virginia granted the Petition for Appeal and heard oral argument on the issue of whether Judge Keith erred in holding that Mrs. Rohrbaugh triggered the no-contest clause in the Will by filing the Subsequent Lawsuit. On April 17, 2009, the Supreme Court reversed Judge Keith's ruling, finding that the Motion for Judgment in the Subsequent Lawsuit, which alleged the breach of contract claims, was not part of the record as it was not properly introduced into evidence before this Court. Accordingly, pursuant to Virginia Code § 8.01-680, the Supreme Court held that this Court's judgment "was plainly wrong and without evidence to support it." Va. Code § 8.01-680 provides that "when a case is decided by a court without the intervention of a jury and a party objects to the decision on the ground that it is contrary to the evidence, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Va. Code § 8.01-680. As the insufficient record was the basis for the Supreme Court's reversal, it did not rule on the underlying substantive will dispute relating to the interpretation of the term "contest" under Virginia law, and thus remanded the case back to this Court for further proceedings.

## II. Analysis

The cardinal principle of will construction is that the testator's intent is the prism through which the will, or any of its provisions, must be examined, *Clark v. Strother*, 238 Va. 533, 539, 385 S.E.2d 578, 581 (1989). When consideration of the four corners of the will manifests an unambiguous testamentary intent, a court "will not indulge in

[2] Mrs. Rohrbaugh filed her first Notice of Appeal on May 31, 2005, and Petition for Appeal with the Supreme Court of Virginia on August 10, 2005. On November 15, 2005, the Supreme Court of Virginia granted the Executors' Motion to Dismiss, without prejudice to Mrs. Rohrbaugh's re-filing her Petition for Appeal once the Estate was closed by this Court. After the Estate was closed, she filed her second Notice of Appeal on or about September 18, 2007, and a Petition for Appeal on November 30, 2007. On March 4, 2008, the Supreme Court of Virginia, *sua sponte*, again dismissed her appeal without prejudice to her re-filing once this Court entered a final order disposing of the probate litigation.

presumptions or invoke canons of construction." *Id.* (citing *Griffin v. Central Nat'l Bank*, 194 Va. 485, 488-89, 74 S.E.2d 188, 190-91 (1953)). *See also Harbour v. SunTrust Bank*, 278 Va. 514, 521, 685 S.E.2d 838, 842 (2009) (citations omitted) ("[u]nder a plain language analysis, a grantor's intention must be determined from what the grantor actually stated, not from what may be supposed the grantor intended to say."); *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 310, 608 S.E.2d 901, 904 (2005) (quoting *Sheridan v. Krause*, 161 Va. 873, 884-85,172 S.E. 508, 511 (1934) ("the intention of the testator as expressed by him in the words he has used ... is the animating spirit, the essence, the soul of the will.")). Once the Court ascertains the testator's intent, that intent prevails unless it violates some rule of law. *Jackson* at 310, 608 S.E.2d at 904.

In Virginia, a no-contest provision[3] of a will is valid and enforceable and is strictly applied according to its express terms. *Keener v. Keener*, 278 Va. 435, 442, 682 S.E.2d 545, 548 (2009) (citing *Womble v. Gunter*, 198 Va. 522, 532, 95 S.E.2d 213, 220 (1956)). "The compelling reasons for such strict enforcement of the testator's language are the protection of a testator's right to dispose of his property as he sees fit, and the societal benefit of deterring the bitter family disputes that will contests frequently engender." *Id.* at 443, 682 S.E.2d at 548 (citing *Womble* at 526-27, 532, 95 S.E.2d at 217, 220-21).

A court's determination of which "activity or participation constitutes a contest or attempt to defeat a will depends upon the wording of the 'no-contest' provision and the facts and circumstances of each particular case." *Id.* at 441, 682 S.E.2d at 548 (quoting *Womble* at 529, 95 S.E.2d at 219). In general, "a resort to the means provided by law for attacking the validity of a will amounts to a contest," even if the will contestant subsequently retreats from her position. *Womble*, 198 Va. at 530, 95 S.E.2d at 219 (citations omitted). For example, a will may be contested upon an allegation of lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or subsequent revocation by a later will. *Id.* at 526, 529-30, 95 S.E.2d at 216, 219 (holding that several beneficiaries triggered a forfeiture clause by bringing suit to invalidate a will on the ground the testator lacked mental capacity). In *Womble*, the

---

[3] A "no-contest" provision, also known as a forfeiture or *in terrorem* clause, is a condition in a will that generally divests a beneficiary of his or her rights to take under the will if they "contest" the will or any part thereof. *See Womble v. Gunter*, 198 Va. 522, 523-24, 95 S.E.2d 213, 215 (1956).

Supreme Court of Virginia noted that a will is "usually" contested on one or more of these six grounds but did not expressly or impliedly limit the scope of what constitutes a will contest solely to these specific grounds. *Id.* at 526, 95 S.E.2d 216.

In *Keener*, the Supreme Court of Virginia considered whether a beneficiary triggered a no-contest clause in a trust by commencing intestate administration of her father's estate. *Keener*, 278 Va. at 442, 682 S.E.2d at 548. The testator created a trust through a pour-over will. The sole purpose of the will was to fund the trust, but only the trust contained the no-contest clause. *Id.* at 437-38, 682 S.E.2d at 546. The Court's mode of analysis "involve[d] applying the language of a written document," the trust's no-contest provision, "to an undisputed fact," the beneficiary's act of opening intestate administration. *Id.* at 442, 682 S.E.2d at 548. The Court also emphasized that its analysis was guided by two principles that support strict construction of no-contest provisions. First, "the testator, or a skilled draftsman acting at his direction, has the opportunity to select the language that will most precisely express the testator's intent." *Id.* at 443, 682 S.E.2d at 548 (citing *Womble*, 198 Va. at 531-32, 95 S.E.2d at 220-21). Second, provisions that work a forfeiture are not favored in the law generally and will not be enforced except according to their clear terms. *Id.* at 443, 682 S.E.2d at 548-49 (citing *Trailsend Land Co. v. Virginia Holding Corp.*, 228 Va. 319, 323-24, 321 S.E.2d 667, 669 (1984) (quoting *Lewis v. Henry's Executors*, 69 Va. (28 Gratt.) 192, 203 (1877)) ("[w]here there are clear words of gift, creating a vested interest, the court will never permit the absolute gift to be defeated, unless it be perfectly clear that the very case has happened in which it is declared that the interest shall not arise")). In concluding that the beneficiary did not invoke the no-contest clause, the Court emphasized that the "testator *could* ... have included, either in his will *or* in the trust, language broad enough to include the acts complained of." *Keener*, 278 Va. at 443, 682 S.E.2d at 549 (emphasis added). As the Court recognized that the testator *could* have penalized an action against the will through a sufficiently broad no-contest provision contained in the trust, it implicitly acknowledged that, while a will "contest" is not *any* claim against the estate, it need not be a direct attack on the will itself. *See id.* The Court intimated, for example, that, if the testator explicitly articulated in the trust document that his "sole purpose [in drafting the] will was to fund the trust," then the acts complained of would have triggered the trust's no-contest provision. *Keener*, 278 Va. at 442-43, 682 S.E.2d at 548-49.

264

In this case, by directing that the no-contest provision be applied "[t]o the extent permitted by law," Mr. Rohrbaugh clearly and unambiguously mandated an expansive construction of this clause to the furthest extent possible under the law. Such intent is further evidenced by his direction that the provision applies to "any person who *contests* this Will *or any provision* hereof, *claims against* this Will or fails to dismiss any such *contest or claim*." Exs. 3, G, P, 14.3 (emphasis added). Thus, Mr. Rohrbaugh analogizes a "contest" to the Will and a "claim against" the Will, and he further provides that the clause applies to anyone who contests not only the entire Will itself but also any individual provision thereof.

In Paragraph 3 of his Will, Mr. Rohrbaugh devised his entire interest in the Orlando Property and bequeathed the net proceeds from the sale of the Great Falls Property to Mrs. Rohrbaugh. As the devise of the Orlando Property was a specific gift that was no longer in the estate at the time of Mr. Rohrbaugh's death, that gift was revoked. *May v. Sherrard's Legatees*, 115 Va. 617, 626, 79 S.E. 1026, 1028 (1913) (holding that a specific gift is revoked where the testatrix alienates the property prior to her death). *See also Hood v. Haden*, 82 Va. 588, 599 (1886) ("if the identical thing bequeathed is not in existence, or has been disposed of, so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished, and the legatee's rights are gone"). Nevertheless, in her lawsuits, Mrs. Rohrbaugh had claimed that she was entitled to the Inverness Property, which Mr. Rohrbaugh purchased with the proceeds of the sale of the Orlando Property, because he "promised" that she would own the Inverness Property upon his death. Irrespective of the merits of this claim,[4] in essence she seeks an interpretation of Paragraph 3 of the Will that would additionally grant her all proceeds arising from the sale of the Orlando Property, thus expanding what she was otherwise entitled to under that provision.[5] Such a contention cannot

---

[4] The jury did, in fact, find against Mrs. Rohrbaugh with respect to her breach of contract claims in returning a verdict in the Subsequent Lawsuit on October 26, 2005.

[5] At the March 11, 2010, hearing before this Court, counsel for Mrs. Rohrbaugh represented that, if the Court were to find that she had not contested the Will up to this point, he might seek an interpretation of the Will to determine whether Mrs. Rohrbaugh is entitled to the Inverness Property, as it was purchased with the proceeds from the sale of the Orlando Property. Such a position would be in direct contradiction to the express terms of the Will and inconsistent with the fact that Mr. Rohrbaugh knew how to provide for proceeds from the sale of property had he wanted to, as that is exactly what he did

be reconciled with the clear and unambiguous language of Paragraph 3, which solely grants her an interest in the Orlando Property and an interest in the net proceeds from the sale of the Great Falls Property.

Furthermore, while Mrs. Rohrbaugh did not assert any direct interest in the Great Falls Property in either lawsuit, during cross-examination before Judge Roush on October 26, 2005, she divulged her actual motive in pursuing her claims against the Estate. Specifically, she declared that she "wouldn't have contested the will to start with" if Mr. Rohrbaugh did not draft a Will under which her stepsons, the Executors and Trustees, "control[ed] what [she] should have gotten anyway." In addition, she acknowledged her earlier awareness of the severe consequences of invoking the no-contest provision.

Applying the principles articulated by the Supreme Court of Virginia in *Keener* and notwithstanding Mrs. Rohrbaugh's argument that the mere filing of her lawsuits cannot invoke the no-contest provision of the Will,[6] the Court finds that Mrs. Rohrbaugh's cumulative actions

---

with the Great Falls Property. *E.g., McMerit Constr. Co. v. Knightsbridge Dev. Co.*, 235 Va. 368, 373, 367 S.E.2d 512, 515 (1988) (holding that the parties did not contractually waive a mechanic's lien, evidenced in part by the fact that "[t]he parties in this case knew how to draft an express lien waiver because they did so with regard to subcontractors.").

[6] The Court need not address whether, standing alone, Mrs. Rohrbaugh invoked the no-contest clause of the Will by filing her lawsuits for breach of contract and claim to an elective share. First, although the Supreme Court of Virginia has not touched upon the subject, non-binding authorities are supportive of the proposition that an *independent* action for breach of contract generally does not constitute a "contest" to the will. *See generally* Claudia G. Catalano, Annotation, *What Constitutes Contest or Attempt to Defeat Will within Provision Thereof Forfeiting Share of Contesting Beneficiary*, 3 A.L.R. 5th 590 (2009). *See also O'Bryan v. O'Bryan*, 28 Va. Cir. 30, 31-32 (Fairfax 1992) (holding that neither a creditor's suit nor a claim arising from alleged wrongful actions of the decedent breach the no-contest clause at issue). In this case, however, Mrs. Rohrbaugh did not intend to bring an *independent* action in the nature of a creditor's suit. As evident from her testimony at trial on October 26, 2005, and the factual circumstances surrounding her claim to the Inverness Property, she fully and consciously intended to seek more than what the provisions of the Will afforded her.

Second, while the "widow's right to her share of her deceased husband's estate thus secured to her by statute is an absolute, paramount, and certain right which her husband may not deny her," *First Nat'l Exch. Bank of Roanoke v. Hughson*, 194 Va. 736, 746, 74 S.E.2d 797, 804 (1953), that right may expressly, or even impliedly, be waived by contract. *Pysell v. Keck*, 263 Va. 457, 461, 559 S.E.2d 677, 679 (2002). *See also* Va. Code § 64.1-151.6 (providing that rights to a homestead and family allowance may also be waived pursuant to a premarital agreement). Indeed, in the Antenuptial Agreement,

constitute an indirect contest or claim against Paragraph 3 of the Will. She intended to repudiate the Will because she disagreed with what she was given under what she described as the "will from hell." She explicitly acknowledged that she did not want to live "under the domination" of the Executors/Trustees, who were responsible under the Will for distributing net trust income to her and who could, in their "sole and absolute discretion," further distribute portions of the principal to her as well. This is precisely the type of behavior that Mr. Rohrbaugh apparently sought to prevent by drafting the broad no-contest provision in his Will. Nonetheless, Mrs. Rohrbaugh sought to thwart his testamentary intent by filing her claims against the Estate. Indeed, she continued on this path knowing that she was actually contesting a provision of the Will and with full knowledge of the consequences of her actions. Thus, after full consideration of the broad language in the no-contest provision of Mr. Rohrbaugh's Will "and the facts and circumstances of [this] case," *Keener*, 278 Va. at 441, 682 S.E.2d at 548, this Court finds that Mrs. Rohrbaugh's conscious and intentional acts invoked the no-contest provision of Mr. Rohrbaugh's Will.

### *III. Conclusion*

For the reasons set forth above, the Court finds that Mrs. Rohrbaugh, by filing and pursuing the Original Lawsuit and Subsequent Lawsuit, invoked the no-contest provision of Mr. Rohrbaugh's Will. Pursuant to this provision, she therefore forfeited any rights, title, or interest that she otherwise had under the Will, except for the total sum of $100.00. Mrs. Rohrbaugh's exceptions to the Court's ruling are noted for

---

Mrs. Rohrbaugh waived "all claims for dower, statutory right, right of support, right of inheritance . . . homestead right, and every claim of every kind or character[, including] rights as surviving spouse to elect to take against" Mr. Rohrbaugh's Will. The Supreme Court of Virginia has not yet considered, however, whether an unsuccessful assertion of a statutory right of election triggers a forfeiture clause. Courts in foreign jurisdictions have generally held that a spouse's attempt to elect to take under the laws of succession does *not* result in a forfeiture of the spouse's interest under the will. *See generally* Catalano, *supra*, n. 14. Nevertheless, the Court need not reach this issue, as the Court holds that it was Mrs. Rohrbaugh's *indirect* attack on the Will, and not merely her unsuccessful assertion of her statutory right of election, that invoked the no-contest clause. Accordingly, the Court also need not address Judge Keith's ruling that, on grounds of public policy, Mrs. Rohrbaugh did not invoke the no-contest clause by pursuing her statutory election claims.

each of the reasons ably articulated by her counsel on brief and at the December 4, 2009, and March 11, 2010, hearings.

## *Order*

This matter came before the Court on December 4, 2009, and March 11, 2010, on remand from the Supreme Court of Virginia for consideration of the Estate of Dorsey W. Rohrbaugh and its Executors' Motion to Construe Will; it appearing to the Court that Geanie L. Rohrbaugh invoked the no-contest provision of Dorsey W. Rohrbaugh's Will for the reasons set forth in the Court's Opinion Letter of this date, it is hereby ordered that Geanie L. Rohrbaugh's entitlement under the Will of Dorsey W. Rohrbaugh is $100.00. Geanie L. Rohrbaugh's exception to the Court's ruling is noted for the reasons argued on brief and during oral argument.