# COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Causey and Callins
Argued at Norfolk, Virginia


ELEANOR A. HUNTER, ET AL.

v.      Record No. 1087-22-1

CHARLES M. HUNTER, JR.                              MEMORANDUM OPINION[*] BY
                                                   JUDGE RICHARD Y. ATLEE, JR.
CHARLES M. HUNTER, JR.                                 OCTOBER 31, 2023

v.      Record No. 1237-22-1

ELEANOR A. HUNTER, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Charles J. Maxfield, Judge Designate

Daniel R. Quarles (George H. Bowles, Sr.; Otey Smith & Quarles;
Williams Mullen, P.C., on briefs), for Eleanor A. Hunter, et al.

William W. Sleeth, III (Brett C. Herbert; Gordon Rees Scully
Mansukhani, LLP, on briefs), for Charles M. Hunter, Jr.


These cross-appeals concern the effect of "no-contest" provisions in two trust agreements

and related litigation. The parties are the children of the individuals who created the trusts.

Eleanor Hunter[1] argues that the circuit court erred when it found that Charles M. Hunter, Jr.

("Chip") did not violate the terms of these no-contest provisions. Chip argues that the circuit

court erred in permitting Eleanor to present certain evidence and testimony and in granting her

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] To avoid confusion, we refer to the members of the Hunter family by their first names.

request for attorney fees (and denying his own request for the same). For the following reasons, we affirm.

## I. BACKGROUND

Charles M. Hunter, Sr. and Theresa Hunter married in 1953 and had two children, Eleanor and Chip, as well as one granddaughter. Charles executed a trust agreement in 2010, naming his daughter, Eleanor, and wife, Theresa, as substitute trustees if he became unable to serve. Charles died in 2013, at which point all his assets passed outright to Theresa, free of any trust. Theresa executed a trust agreement in 2011, naming Eleanor as the initial trustee. Her trust agreement provided that upon the death of both Charles and Theresa, Chip would receive one-third of the trust assets, minus the value of certain loans previously extended to him, and that Eleanor and the granddaughter's trust would each also receive one-third of the trust assets.

Both trust agreements contain no-contest provisions that would revoke a beneficiary's interest if they took certain actions.[2] Each trust agreement also waived the trustee's "formal requirements to inform and report set forth in" former Code § 55-548.13 (current Code § 64.2-775).

---

[2] The no-contest provision of Theresa's trust agreement, which is the relevant, active trust at this point, states

> if any beneficiary under this Trust Agreement takes any one or more of the actions described in this paragraph, then the interest of such beneficiary under this Trust Agreement shall be revoked, and such beneficiary shall be deemed to have predeceased me without surviving descendants for all purposes under this Trust Agreement, effective as of the date such action is taken.

One of the "actions" triggering forfeiture was "[c]ontest[ing] any provision of this Trust Agreement," which includes taking "any action seeking to invalidate, nullify, set aside, render unenforceable, or otherwise avoid the effect of such instrument, action or transaction." The trust provides a caveat, however, that "a petition made in good faith and not objected to by my Trustee hereunder, seeking an interpretation of this or any other instrument, shall not be considered a contest of such instrument."

Theresa died in 2015, at which point Eleanor began serving as trustee. Sometime thereafter, Chip allegedly learned of a significant decline in the value of the trust's assets that he did not believe was attributable to market forces. In 2017, Chip filed a two-count complaint for declaratory judgment against Eleanor as trustee and individually. In the first count, Chip sought a judicial declaration that the second count would not violate the no-contest provisions of the trust agreements. The second count sought a judicial declaration of the obligations owed by Eleanor, as trustee, to provide Chip with information and documents relating to the trusts. The second count provided, however, that the circuit court was to address the second count "[i]f, and only if," the circuit court first found that Chip's second count would not trigger the no-contest provisions.

Eleanor filed a counterclaim that asserted that Chip's complaint violated the no-contest provisions because he sought to avoid the trust agreements' waiver of the trustee's inform-and-report obligations under Code § 64.2-775. She argued that Chip's complaint violated the no-contest provisions and that his interests in the trusts were therefore revoked.

Eleanor moved for summary judgment on her counterclaim. In Chip's brief in opposition, he contended that the Virginia Uniform Trust Code imposed "non-waivable duties" on a trustee. Therefore, he argued that "permitting a waiver" of statutory and common law duties to inform and report and finding that "his efforts to determine his rights" triggered the no-contest clauses would violate the Uniform Trust Code. After a hearing, the circuit court found that Chip's complaint "contested, or sought to invalidate, nullify, set aside, render unenforceable or otherwise avoid the effect of," the trust agreements' waiver of statutory inform-and-report obligations and thus triggered the no-contest provisions of the trusts. Therefore, the circuit court granted Eleanor's motion for summary judgment and held that Chip's interest in the Theresa trust was revoked.

- 3 -

Chip appealed to the Supreme Court of Virginia, which found that the circuit court improperly reached the complaint's second count without first determining whether doing so would violate the no-contest provisions. *Hunter v. Hunter (Hunter I)*, 298 Va. 414, 430 (2020). The Supreme Court reversed the circuit court's ruling and found that Chip had properly employed an alternative pleading model as set forth in *Virginia Foundation of Independent Colleges v. Goodrich*, 246 Va. 435 (1993), and thus had not triggered the no-contest provision. Therefore, in finding Chip in violation of the no-contest provisions, the circuit court had erroneously reached the second count of Chip's complaint without first addressing the first count regarding whether his claims would violate the no-contest provisions. *Id.* at 437. The Supreme Court briefly discussed, but did not address on the merits, Chip's argument that "*if* the inform-and-report waiver and no-contest provisions were *incorrectly* interpreted to erect an impregnable barrier to judicial review of a fiduciary's duty to inform and report, then neither provision would be enforceable as a matter of law." *Id.* at 436. The Supreme Court noted, however, that it had "little doubt that this claim, if Chip had pleaded it in his complaint, could have been challenged as a contest of either the no-contest or the waiver provisions." *Id.* The Supreme Court declined to address it, however, because in employing the alternative pleading model, "Chip never pleaded that argument, and expressly disclaimed it in his declaratory judgment complaint." *Id.*

On remand, the circuit court granted Eleanor's motion for leave to file an amended counterclaim. The amended counterclaim addressed Chip's arguments concerning the enforceability of the no-contest provisions, which he had raised in his opposition to her motion for summary judgment and his brief to the Supreme Court, and argued that Chip had violated the no-contest provisions in those proceedings. Chip then nonsuited the second count of his complaint, effectively disclaiming his challenges to Eleanor's administration of the trust and

those trust provisions. The circuit court entered an agreed order bifurcating the trial on Eleanor's amended counterclaim from a later hearing on attorney fees and costs. After the trial on the amended counterclaim, the circuit court found that Chip had not violated the no-contest provisions as Eleanor alleged. The circuit court therefore entered judgment in favor of Chip on Eleanor's amended counterclaim. Eleanor appeals this ruling.

Before the second phase of the trial, the parties filed competing motions for attorney fees under Code § 64.2-795.[3] Chip objected to Eleanor offering witness testimony or exhibits as to attorney fees because she had not filed a witness and exhibit list as required by the pretrial scheduling order. The circuit court, noting that the nature of the bifurcated trial accounted for the inadvertence and that Chip suffered no prejudice, overruled Chip's objections and allowed the witnesses' testimony and admitted the exhibits. Chip also specifically objected to one of Eleanor's witnesses, attorney Michael Ware, testifying as an expert witness on the issue of the reasonableness of Eleanor's attorney fees, asserting that Eleanor, as a prevailing party, had not made a timely disclosure. The circuit court overruled that objection and allowed the testimony.

After the hearing on attorney fees, the circuit court found that "nobody won" the litigation, which only "resolve[d] a point of law . . . that you have standing to do a declaratory judgment in the face of" a no-contest provision without reaching Chip's contention that Eleanor breached her fiduciary duties as trustee. The circuit court denied Chip's request for attorney fees because he had not established wrongdoing by Eleanor because she did not act "in bad faith in defending the trust." It also denied Eleanor's request for an award of attorney fees against Chip. The circuit court, however, found that Eleanor's attorney fees were reasonable and properly

---

[3] "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Code § 64.2-795.

payable as trust expenses. It therefore granted her request for attorney fees from the trust. Chip now appeals.

## II. ANALYSIS: ELEANOR'S APPEAL

Eleanor argues that the circuit court ought to have granted her motion for a declaratory judgment that Chip violated the no-contest clauses in the trust agreements in the course of opposing her counterclaim and in his arguments to the Supreme Court.

### A. *Standards of Review*

Whether a beneficiary has triggered a trust's no contest clause presents "a mixed question of law and fact." *Rafalko v. Georgiadis*, 290 Va. 384, 401 (2015) (quoting *Keener v. Keener*, 278 Va. 435, 441 (2009)). "What activity or participation constitutes a contest or attempt to defeat a [trust] depends upon the wording of the 'no contest' provision and the facts and circumstances of each particular case." *Keener*, 278 Va. at 441 (quoting *Womble v. Gunter*, 198 Va. 522, 529 (1956)). "Accordingly, we accord deference to the circuit court's findings of historical fact, but review questions of law de novo." *Id.*

### B. *The circuit court did not err in concluding that Chip did not violate the no-contest provision.*

The thrust of Eleanor's argument on appeal is that Chip, in making certain arguments in response to her counterclaim and on appeal, violated the no-contest provision of the Theresa trust agreement (that being the remaining trust and therefore the one at issue). That provision states

> if any beneficiary under this Trust Agreement takes any one or more of the actions described in this paragraph, then the interest of such beneficiary under this Trust Agreement shall be revoked, and such beneficiary shall be deemed to have predeceased me without surviving descendants for all purposes under this Trust Agreement, effective as of the date such action is taken.

One of the "actions" triggering forfeiture was "[c]ontest[ing] any provision of this Trust Agreement," which includes taking "any action seeking to invalidate, nullify, set aside, render unenforceable, or otherwise avoid the effect of such instrument, action or transaction."

As a preliminary matter, we will not find that Chip's arguments on appeal to the Supreme Court violated the no-contest provision. The Supreme Court, having reviewed the record below and briefing on appeal, ruled that Chip had properly employed the alternative pleading model and thus had not triggered the no-contest provision. It expressly declined to address Chip's arguments regarding the invalidity of the no-contest or waiver provisions, finding they were not ripe for review. It elected to "leave Chip's alternative argument for the circuit court to consider in the first instance on remand, assuming that Chip properly asserts it." *Hunter I*, 298 Va. at 436. The Supreme Court opined that it had "little doubt that this claim, if Chip had pleaded it in his complaint, could have been challenged as a contest of either the no-contest or the waiver provisions." *Id.* In refusing to address the argument, however, it noted that by employing the alternative pleading model, "Chip never pleaded that argument, and expressly disclaimed it in his declaratory judgment complaint." *Id.*

Upon remand from the Supreme Court, Chip nonsuited the portion of his complaint that sought interpretation of the no-contest and inform-and-report waiver provisions. The circuit court was left to address Eleanor's counterclaim, alleging that Chip had violated the no-contest provisions, but there was nothing left to address of Chip's initial complaint. In other words, practically speaking, Eleanor had assumed the role of plaintiff, and Chip's pleadings were all responsive (aside from attendant matters concerning attorney fees). Chip's arguments concerned why he had not violated the no-contest provisions and why they were not enforceable against him or applicable to his actions. He did not make any request of or bring any action in the circuit court that sought to "invalidate, nullify, set aside, render unenforceable, or otherwise avoid the

- 7 -

effect of" the trust. Instead, any challenges to the provisions of the trust were defensive, seeking an interpretation of those clauses to avoid their application specifically to him in this matter, not seeking that they be held to be unenforceable entirely.

In other words, just as the Supreme Court reserved judgment on Chip's challenges to the inform-and-report waiver and no-contest provisions because he did not assert those claims in his complaint, finding they would only be ripe for review "assuming that Chip properly asserts [them]" on remand, *Hunter I*, 298 Va. at 436, we conclude that he did not, in fact, assert them here. Recognizing that these circumstances are highly specific to "the facts and circumstances of each particular case," *Keener*, 278 Va. at 441 (quoting *Womble*, 198 Va. at 529), we cannot say that the circuit court erred in finding that Chip had not triggered the no-contest provision.

### III. ANALYSIS: CHIP'S APPEAL

Chip assigns seven errors, all of which fall into two general categories: (1) the circuit court erred by permitting Eleanor's offering exhibits and witness testimony because she failed to file a witness and exhibit list pursuant to the court scheduling order, and (2) the circuit court erred by granting Eleanor's request for attorney fees and denying Chip's. Finding no abuse of discretion, we affirm.

### A. *Exhibits and Witness Testimony*

#### 1. Standard of Review

"[W]e review the circuit court's ruling regarding the admission of evidence for an abuse of discretion." *Toraish v. Lee*, 293 Va. 262, 272 (2017). This is also the case when considering expert testimony. *Id.* at 268. While this Court has emphasized the importance and pragmatism of scheduling orders, and we have repeatedly upheld a trial court's decision to exclude evidence that

did not comply with a scheduling order,[4] it is equally clear that this deference to the trial court's discretion extends to a decision to *admit* evidence that was not timely disclosed under that court's own scheduling order. *See, e.g.*, *Stark v. Dinarany*, 73 Va. App. 733, 749 (2021) (noting that the party was on notice that the admitted evidence, a postnuptial agreement, would be at issue). In other words, "[w]hen we say that a circuit court has discretion, we mean that 'the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 745-46 (second alteration in original) (quoting *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021)). "Thus, only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 746 (quoting *Galiotos*, 300 Va. at 11).

> 2. The circuit court did not abuse its discretion in admitting testimony and exhibits that were not disclosed according to the timeline set out in the scheduling order.

Because Eleanor did not file a witness and exhibit list when she was required to do so, at least fifteen days before trial, Chip argues that the circuit court abused its discretion in admitting those exhibits and testimony related to the issue of attorney fees. A court abuses its discretion if "a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Toraish*, 293 Va. at 268 (quoting *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 429 (2012)).

---

[4] *See, e.g.*, *Reaves v. Tucker*, 67 Va. App. 719, 736 (2017) (finding no abuse of discretion in "uphold[ing] the scheduling order by denying wife permission to present any witnesses or exhibits that had not been disclosed prior to trial"); *Rahnema v. Rahnema*, 47 Va. App. 645, 658 (2006) (finding no abuse of discretion in excluding evidence, noting that "[t]he impartial, consistent enforcement of scheduling orders provides systemic benefits to litigants and trial courts alike").

Here, the circuit court, in overruling Chip's objection, found that there was no surprise or prejudice to Chip in not being provided the exhibits or disclosures concerning attorney fees,[5] noting that "the whole purpose of the hearing was attorney fees.  No surprise there."  It also noted that the failure to "comport with the pre-trial order" was understandably due to inadvertence, as "this is a bit of an ambiguous situation when you've got a bifurcated case and you set up a separate hearing on attorney fees."  Chip also objected to the purportedly late disclosure of the expert witness on the reasonableness of her claimed fees, attorney Michael Ware, which only was late if Eleanor had been a "prevailing party" in the underlying litigation; however, the circuit court explicitly held that "nobody won" the litigation.  The circuit court here committed none of the errors that are considered an abuse of discretion, and we cannot say that reasonable jurists could not differ on the court's rulings; accordingly, it was not an abuse of discretion to allow exhibits and testimony regarding the issue of attorney fees.

B.  *Attorney Fees and Costs*

1.  Standards of Review

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  *Fadness v. Fadness*, 52 Va. App. 833, 848 (2008) (quoting *Graves v. Graves*, 4 Va. App. 326, 333 (1987)).  "The key to a proper award of counsel fees [is] . . . reasonableness under all of the circumstances revealed by the record."  *Id.* at 849 (alterations in original) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)).  To the extent that some of Chip's arguments involve statutory construction or issues of law, we review

---

[5] The pretrial scheduling order stated: "Any exhibit or witness not so identified and filed will not be received in evidence . . . unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence."  It also provided that "the time limits and prohibitions contained in this order may be waived or modified by leave of [c]ourt for good cause shown."

those de novo. *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017). Finally, "[o]n appeal, we will not reverse findings of fact 'unless plainly wrong.'" *Milam v. Milam*, 65 Va. App. 439, 462 (2015) (alteration in original) (quoting *Budnick v. Budnick*, 42 Va. App. 823, 834 (2004)).

2. The circuit court did not err in awarding Eleanor attorney fees from the trust or in denying Chip's request for fees.

Chip both advocates for why Eleanor should not have been awarded attorney fees, paid from the trust, and for why the circuit court ought to have awarded them to him. The thrust of Chip's first argument is that the circumstances do not satisfy the factors presented in an Oklahoma Court of Civil Appeals case, *Atwood v. Atwood*, 25 P.3d 936, 947 (Okla. Civ. App. 2001). As a preliminary matter, *Atwood* is not Virginia law and has little persuasive value to, and no binding effect on, Virginia courts. Here, under Code § 64.2-795,[6] the consideration is what "justice and equity may require."

Chip argues, using the *Atwood* factors, that "justice and equity" do not support an award because (1) Eleanor did not prevail on any substantive legal issue, (2) she "unnecessarily prolonged the litigation," (3) she "has the ability to bear the financial burden," and (4) she acted in bad faith in the course of litigation. Even putting aside the critical issue that these factors are not drawn from Virginia jurisprudence, each of these points plainly fail.

First, Code § 64.2-795 does not require that a party prevail in order to receive an award of attorney fees, paid either by the other party or from the trust. The remaining arguments are pure issues of fact, which the circuit court was able to weigh and take into account when

---

[6] Eleanor makes the curious argument that the award of attorney fees was made not pursuant to Code § 64.2-795, but instead under Code § 64.2-762 ("A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for . . . [e]xpenses that were properly incurred in the administration of the trust . . . ."). This is despite her own amended complaint citing Code § 64.2-795 in her request for fees, and the final order awarding fees expressly mentioning Code § 64.2-795 while making no mention of Code § 64.2-762. In fact, the entire record appears to make no mention of Code § 64.2-762.

considering the competing requests for fees. It even expressly found the last claim to be untrue, and it ruled that Eleanor did not act in bad faith in defending the trust. Despite Chip's strenuous disagreement on these factual matters, there is nothing plainly wrong in the circuit court's conclusions. Moreover, the circuit court did not order that Chip pay Eleanor's attorney fees; it ordered that she be reimbursed from the trust.

For similar reasons, it was not error to refuse to grant Chip's request for attorney fees. As the initial complainant, Chip was the originator of the legal action. Considering that, along with the factual conclusion that Chip did not establish that Eleanor acted in bad faith, the circuit court could reasonably conclude that "justice and equity" did not support an award of his attorney fees, paid either from Eleanor or the trust. Accordingly, we find no error.

Seemingly as a corollary argument that Eleanor litigated wastefully or in bad faith, Chip finally argues that Eleanor should have filed, or been denied attorney fees for not filing, a petition for aid and guidance, otherwise referred to as a "request for instructions and an action to declare rights," Code § 64.2-710, instead of litigating the no-contest clause issue.[7] Such a petition allows a fiduciary, without advocating for a position, to place a legal issue before a trial court for consideration. Once again, having no Virginia law to cite, he suggests we follow the New Hampshire case of *Hodges v. Johnson*, 244 A.3d 245 (N.H. 2020), which upheld a lower court's denial of reimbursement for legal fees when the party could have, but did not, file an analogous "petition for instruction." This outcome, and the New Hampshire court's rationale for it, was more attributable to the deferential standard of review regarding awards of attorney fees on appeal, rather than there being any rule favoring such petitions when awarding attorney fees. We decline Chip's invitation for this Court to sit in the role of the legislature and create new law

---

[7] On brief, Eleanor also claims that Chip never raised this argument below and thus it is waived. This claim is directly contradicted by the hearing transcripts, in which his counsel raised this issue, and they show that it was vigorously debated before the circuit court.

requiring a court to favor those who file petitions for aid and guidance when reviewing requests for attorney fees. "We refuse to do so as it is our role to interpret the statutes—not to make the law." *Thormac, LLC v. Dep't of Alcoholic Beverage Control*, 68 Va. App. 216, 230-31 (2017). Accordingly, we find no error.

## IV. CONCLUSION

For the foregoing reasons, we find no error in the circuit court's rulings and therefore affirm.

*Affirmed.*