COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Lorish and Frucci

CHRISTOPHER BAKWIN, ET AL.

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
v.      Record No. 0839-24-1                    JANUARY 13, 2026

SANFORD J. SCHLESINGER, EXECUTOR
 IN THE LAST WILL AND TESTAMENT
 DATED DECEMBER 14, 2016, OF
 MICHAEL BAKWIN, DECEASED

UPON A REHEARING

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge

(Glen M. Robertson; Denis Wiley; Raymond R. Granger; Karen R.
Carnegie, Guardian ad litem for the minor beneficiaries; Wolcott
Rivers Gates; McLaughlin & Stern, LLP; Granger & Associates,
LLC; Karen Robins Carnegie, PLC, on briefs), for appellants Peter
Bakwin, Elizabeth Eason, Lisa Lindgren, Jean Bakwin, Lisa M.
Morgan, Executor of the Estate of Patricia G. Morgan, and Tanna
Clark.

(Jason E. Ohana; Jonathan Brooks; Wilcox & Savage, P.C., on
brief), for appellant Christopher Bakwin.

(Robert W. McFarland; Michael Barker; Robert Loftin;
McGuireWoods LLP, on briefs), for appellee.

The appellants are seven named beneficiaries of Michael Bakwin's ("Bakwin") 2016

will, which named Sanford J. Schlesinger as the executor of Bakwin's estate and the trustee of

various pre-residuary trusts created by the will. Following a series of conflicts between the

appellants and Schlesinger arising during Schlesinger's tenure as executor, the appellants moved

in the circuit court to disqualify Schlesinger from serving as the trustee of any of the trusts. The

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

circuit court denied that motion and found that it violated the will's no-contest clause, forfeiting the appellants' interests in the estate. We agree with the appellants that the circuit court did so in error.[1] Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND[2]

Bakwin had three children with his first wife: Peter Bakwin, Christopher Bakwin, and Elizabeth Eason.[3] He later divorced his first wife and married Doris Jean Winchester, who had four children from two previous marriages: James Polk (deceased), Jean Bakwin, Lisa Lindgren, and Patricia Morgan (deceased).[4] Starting in 1990, Bakwin and Winchester split their time between Virginia and New York. Winchester died in 2004.

---

[1] Appellant Christopher Bakwin did not file an opening brief or appear for argument. We previously dismissed his appeal but subsequently granted his petition for rehearing and ordered supplemental briefing. In his supplemental brief, Schlesinger does not contest Christopher's right to relief, assuming the trial court erred. "If an appellant fails to file a brief in compliance with the[] Rules, this Court *may* dismiss the appeal." Rule 5A:26 (emphasis added). We decline to exercise that discretion on rehearing. This Court did not issue Christopher a show cause order or otherwise notify him of a defect with his appeal. Moreover, the circuit court's judgment affects Christopher and the other appellants equally. *Cf. Roanoke v. Blair*, 107 Va. 639, 647 (1908) (holding that, "where the parties appealing and the parties not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment," appellate courts "will consider the whole case and settle the rights of the parties not appealing as well as those who bring up their case by appeal"). Finally, it would be inequitable to allow the circuit court's erroneous judgment to impact Christopher's descendants, particularly in light of the guardian ad litem's Rule 5A:19(d) notice joining the opening brief filed by the other six appellants.

[2] When reviewing a trial court's grant of summary judgment, we "accept[] as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

[3] Elizabeth Eason, who remarried during the proceedings, is sometimes referred to in the record as Elizabeth Johnson.

[4] The seven appellants in this case are Peter, Christopher, Elizabeth, Jean, Lisa Lindgren, James's daughter Tanna Clark, and Lisa Morgan in her capacity as executor of Patricia Morgan's estate.

Schlesinger, a New York lawyer, was Bakwin's estate-planning attorney and drafted the operative last will and testament in 2016. The will named Schlesinger as the executor of Bakwin's estate and directed him to sell Bakwin's artwork and distribute the proceeds equally to the appellants; distribute various personal and household effects equally to the appellants; and distribute the Virginia house to Winchester's surviving children and her granddaughter Tanna Clark.[5]

In addition to those distributions, the will also established numerous pre-residuary trusts. First, it created a trust for the appellants' benefit funded with Bakwin's remaining generation-skipping-transfer-tax exemption. *See* 26 U.S.C. § 2631. Next, it devised $100,000 to each of Bakwin's and Winchester's great-grandchildren, to be held in trust for any great-grandchildren who were under 25 years old when Bakwin died.

The remaining estate was to be divided into equal shares for each of the appellants and their descendants. If none of Bakwin's children, Winchester's children, or Clark survived Bakwin, the will directed that Schlesinger distribute the remaining estate "to such persons and in such proportions" as would be distributable under Virginia law if Bakwin had died intestate.

In addition to naming Schlesinger as the executor, the will also "nominate[d], constitute[d] and appoint[ed]" him as the trustee of each of the pre-residuary trusts. It named Schlesinger's wife and law partner, Lianne Lazetera, as the successor executor and trustee should Schlesinger "die or shall be or become unwilling or unable to qualify and/or act or continue to act as Trustee."

Finally, the will contained a no-contest clause "revok[ing] any share or interest" in the estate "or in any trust created" by the will to any beneficiary "seeking to void, nullify or set aside

_____

[5] The will also left $200,000 to a New York hospital and $120,000 spread among four other non-appellant beneficiaries.

all or any part of" the will in "any proceeding or action in any court."[6]  The clause also provided

for the disinheritance of any beneficiary who "makes a claim which is based upon any alleged

act or omission by [Bakwin] individually, or in [his] capacity as trustee, executor, . . . or in any

other capacity."

Bakwin died in December 2018, and the will was admitted to probate in Virginia later

that month.  Schlesinger qualified as the executor by court order, "made oath as the law directs,"

and recorded the required bond.  The Commissioner of Accounts approved a total executor's

commission of $450,000, plus reasonable attorney fees.  Schlesinger hired his own law firm

---

[6] The full no-contest clause stated:

> In the event that any beneficiary, legatee and/or devisee under this my Last Will and Testament, commences, prosecutes, promotes, intervenes in, contributes to or voluntarily participates in, directly or indirectly, or counsels or aids any other person to commence, prosecute, promote, intervene in, contribute to or voluntarily participate in, directly or indirectly, any proceeding or action in any court, agency, tribunal or other forum wherein such beneficiary, legatee and/or devisee or the counseled person (1) seeks to void, nullify or set aside all or any part of this my Last Will and Testament or (2) makes a claim which is based upon any alleged act or omission by me individually, or in my capacity as trustee, executor, partner, officer or director, or in any other capacity; then I revoke any share or interest in my estate given under this my Last Will and Testament or in any trust created under this my Last Will and Testament: (i) to the person seeking to void, nullify or set aside all or any part of this my Last Will and Testament and/or making the claim (the "claimant"), (ii) to the counseling person and (iii) to the issue of each such claimant and counseling person, and such share or interest shall be immediately disposed of as if such claimant or counseling person had then died without issue.  These provisions shall remain in effect from my death until no trust hereunder is in existence and shall apply to each trust hereunder, whether or not the administration of my estate has been completed.  If any provision of this Article "NINETEENTH" is held to be unenforceable or void for any reason, the remaining provisions shall be fully effective.

- 4 -

(Schlesinger, Lazetera & Auchincloss LLP, or "SLA") to assist with his executor duties and McGuireWoods LLP to assist with Virginia-related matters.

In April 2020, Schlesinger submitted to the Commissioner of Accounts an amended inventory showing estate assets of around $45,000,000 and a first accounting showing around $795,000 in legal fees paid to SLA and around $149,000 in legal fees paid to McGuireWoods. The first accounting also showed that Schlesinger had taken a partial executor commission of $100,000.

The appellants objected to the legal fees. In February 2021, following a hearing, the Commissioner of Accounts concluded that, at Schlesinger's direction, the estate had paid legal fees that "appeared to [be] extremely high and unreasonable." For example, the Commissioner noted that SLA had billed the estate $1,250 per hour for Schlesinger "to review the will he prepared." The Commissioner directed Schlesinger to restore around $485,000 in legal fees to the estate but allowed him to recharacterize $350,000 of those fees as the rest of his executor commission, reducing the amount of fees he had to return.[7]

In April 2021, the appellants moved to disqualify Schlesinger and Lazetera from serving as trustees of any of the pre-residuary trusts and asked the court to appoint a different trustee under Code § 64.2-1405(A)(viii).[8] In support of their motion, they relied on Schlesinger's alleged misconduct as executor, including the overbilling found by the Commissioner of Accounts; Schlesinger's "impaired judgment" in managing the estate's investment assets; and his delay in making preliminary distributions. The appellants also claimed that Schlesinger and

_____

[7] In May 2024, after the notice of appeal was filed in this case, the circuit court largely affirmed the Commissioner's decision over Schlesinger's objections but sustained the objections to a portion of the Commissioner's report that provided "further guidance" for future billing practices.

[8] Code § 64.2-1405(A)(viii) allows a circuit court to appoint a trustee other than one named in a will for "good cause shown" and "on motion of any interested party."

- 5 -

Lazetera both had conflicts of interest because SLA would desire to recoup the restored attorney fees from the estate. Schlesinger responded that the allegations made in the motion were meritless and also moved to dismiss the motion as a violation of the will's no-contest clause.

Following a hearing, the circuit court dismissed the appellants' motion to disqualify. The court concluded that the motion violated the no-contest clause because it sought to void, set aside, or nullify the will's provision appointing Schlesinger as trustee and Lazetera as substitute trustee. The court summarized the appellants' objection to Schlesinger as based on mere "dislike" and "a personality conflict," which the court explained was "certainly not a basis to disqualify an individual as Trustee." In doing so, the court distinguished the appellants' arguments from a claim that Schlesinger was "legally incompetent or legally disqualified from being able to qualify as a Trustee." The court concluded that the appellants' violation of the no-contest clause rendered them without standing to challenge Schlesinger's and Lazetera's appointments and dismissed their motion to disqualify, making clear that its ruling was limited to standing. The court later denied the appellants' motion for reconsideration.

In September 2021, while the probate case was ongoing, Schlesinger filed a "complaint seeking advice and guidance" as to how to distribute Bakwin's remaining estate.[9] Schlesinger alleged that the appellants had violated the no-contest clause and should be treated as if they predeceased Bakwin, authorizing Schlesinger to distribute the estate's remaining assets to Bakwin's intestate heirs.[10] Schlesinger later moved for partial summary judgment on his claims

_____

[9] The complaint seeking advice and guidance generated a docket number separate from the probate action, and it is the final order in the advice-and-guidance suit that is before us on appeal.

[10] Specifically, Schlesinger sought to distribute 1/3 of Bakwin's estate to the estate of Bakwin's sister; 1/3 to one of Bakwin's nieces; and 1/12 each to three remaining nieces and one remaining nephew.

that the appellants and their descendants had no rights or interests in Bakwin's estate, which the appellants opposed.

In November 2023, the court granted Schlesinger's motion for partial summary judgment. Consistent with its conclusion in the probate case, the court found that the no-contest clause was unambiguous and that the motion to disqualify violated the clause.[11] Accordingly, the court found that the will revoked any share or interest in the estate held by the appellants and their minor beneficiaries. The court ultimately entered a final order authorizing Schlesinger to distribute the remaining estate as set forth in his complaint for advice and guidance.[12] The appellants now appeal.

## II. ANALYSIS

"[W]hether a no-contest clause in a will has been triggered presents, on appellate review, a mixed question of law and fact." *Keener v. Keener*, 278 Va. 435, 441 (2009). Whether conduct "constitutes a contest or attempt to defeat a will depends upon the wording of the 'no contest' provision and the facts and circumstances of each particular case." *Id.* (quoting *Womble v. Gunter*, 198 Va. 522, 529 (1956)). "[A]pplying the language of a written document to an undisputed fact" is "a pure question of law, subject to review de novo on appeal." *Id.* at 442. We "review questions of statutory interpretation de novo." *Stahl v. Stitt*, 301 Va. 1, 8 (2022).

The appellants contend that the circuit court erred by concluding that their motion to disqualify Schlesinger and Lazetera as trustee and successor trustee violated the will's no-contest

---

[11] Schlesinger initially argued that the circuit court's ruling in the probate case collaterally estopped the appellants from arguing that they had not violated the no-contest clause but eventually abandoned that argument, as there had not yet been a final order in the probate case. The circuit court did not apply collateral estoppel. Schlesinger does not assert that the circuit court's probate ruling presents any procedural bar to the arguments the appellants now raise.

[12] Schlesinger had also sought guidance as to whether to recoup distributions previously made to the appellants; the circuit court ordered that he could not do so.

clause.  They assert that a challenge to Schlesinger's and Lazetera's qualifications based on conduct occurring after Bakwin's death was not an attempt to "void, nullify or set aside" the will's provision "appointing" Schlesinger and Lazetera.  We agree.[13]

"[N]o-contest provisions are simultaneously 'strictly enforced' and 'strictly construed.'" *Hunter v. Hunter*, 298 Va. 414, 424 (2020) (quoting *Rafalko v. Georgiadis*, 290 Va. 384, 402 (2015)).  They are strictly enforced because "the common law honors 'the societal benefit of deterring the bitter family disputes that will contests frequently engender.'" *Id.* (quoting *Keener*, 278 Va. at 442).  And they are strictly construed because Virginia "respect[s] the ancient maxim that 'equity abhors forfeitures.'" *Id.* (quoting *Jones v. Guaranty & Indem. Co.*, 101 U.S. 622, 628 (1879)).  They are also strictly construed because "the testator, or a skilled draftsman acting at his direction, has the opportunity to select the language that will most precisely express the testator's intent." *Keener*, 278 Va. at 443.  "[S]trictly enforced" means that the provision will be "enforce[d] . . . without any wincing . . . concerning its alleged harshness or unfairness—so long as the testator or settlor clearly intended the forfeiture." *Hunter*, 298 Va. at 424.  And "strictly construed" means "that the intent to forfeit must be *very* clear" and "[t]he language used must 'precisely express' the specific intent to cause a forfeiture." *Id.* (quoting *Keener*, 278 Va. at 442).  "Strict enforcement cannot be justified by mere inferences of intent," and the instrument must use "terms so clear and explicit as to leave no room for any other construction." *Id.* (quoting *Davis v. Wickline*, 205 Va. 166, 169 (1964)).

"Wills are most frequently contested by beneficiaries who claim the document itself is invalid, either because the testator executed it without the requisite formalities, lacked the

---

[13] "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).  Because we agree that the circuit court erred by failing to strictly construe the no-contest clause, we do not address the appellants' remaining arguments.

required capacity, was induced to sign the instrument against [his] free will, or revoked it in favor of some alternative disposition." Deborah S. Gordon, *Forfeiting Trust*, 57 Wm. & Mary L. Rev. 455, 474 (2015). "Typical testamentary forfeiture clauses seeking to prevent these types of claims therefore provide that anyone who challenges the will forfeits any interests received under it; if the contestant is successful, the will (including the clause) is invalidated." *Id.* at 461-62. "[A] typical forfeiture clause . . . [is] directed towards the most common types of will 'attacks,' which contest the *validity* of the testamentary instrument or any of its components." *Id.* at 464-65 (emphasis added).

The no-contest clause in Bakwin's will is just such a forfeiture clause. It applies to any proceeding "to void, nullify or set aside all or any part of" the will. To "void" something is to render it "of no *legal* effect." *Void*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). A court order that is void ab initio or has been voided by a superior court, for example, cannot legally bind the parties. *Hannah v. Commonwealth*, 303 Va. 106, 119-20, 123 (2024). Similarly, to "set aside" means "to annul or vacate," while "nullify" means "to make legally null and void." *Set Aside*, *Black's Law Dictionary*, *supra*; *Nullify*, *Black's Law Dictionary*, *supra*. Thus, the no-contest clause applies to proceedings to invalidate the *legal* effects of the will or its provisions. But it does not necessarily apply to proceedings that merely threaten to undermine a provision's practical effects. Put another way, it prohibits attacks against the validity of the will or its provisions, but it does not prohibit beneficiaries from participating in proceedings that are collateral to issues raised in the will.

The appellants did not challenge the validity of any provision in Bakwin's will but merely sought to intervene in a separate qualification process that the Code places squarely within the circuit court's authority. *See Est. of Aaron Rimland*, 2003 N.Y. Misc. LEXIS 675, at *6 (N.Y. Surrogate's Ct. June 3, 2003) ("In terrorem clauses are designed to prevent attacks on

the validity of a will and it has been held that they do not come into play where the issue is whether a fiduciary nominated in the will is qualified to serve in that capacity."). "Before proceeding to act as trustee," a trustee named in a will must "qualify and give bond before the proper circuit court or clerk." Code § 64.2-1401(B); *see also* Code § 64.2-1400(E) (contemplating that "less than all the trustees named in the will" may qualify and limiting the trust powers to only the trustees who have qualified). The court "where the will has been probated" has "exclusive jurisdiction for the qualification of the trustee." Code § 64.2-1401(A); *see also* Code § 64.2-1400(A) (providing that the clerk of a circuit court or a duly qualified deputy "*may* qualify any trustee named in a will, deed, or other writing, and require and take from them the necessary bonds" (emphasis added)).[14] Qualification places the trustee under the supervision of the commissioners of accounts, who "have general supervision of all fiduciaries admitted to qualify in the court." Code § 64.2-1200(A).

Moreover, a "court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law." Code § 64.2-710(A). The judicial proceeding "may relate to any matter involving the trust's administration." Code § 64.2-710(C). Notably, a beneficiary "may petition to the court to remove a trustee, or a trustee may be removed by the court on its own initiative." Code § 64.2-759(A). According to the Third Restatement of Trusts, the same reasons that may justify a court removing a trustee may also justify the court refusing the trustee's appointment in the first place. Restatement (Third) of Trusts, § 37 cmt. a (2012).

---

[14] The difference between appointment and qualification is further illustrated in Code § 64.2-1400(B), which allows the clerk or deputy to "appoint and qualify an individual or a corporation" as trustee if certain conditions are met. "When the General Assembly uses two different terms in the same act, it is presumed to mean two different things." *Sauder v. Ferguson*, 289 Va. 449, 457 (2015) (quoting *Forst v. Rockingham Poultry Mktg. Coop.*, 222 Va. 270, 278 (1981)). The General Assembly's decision to use only "qualify" in subsection (A) and "appoint and qualify" in subsection (B) demonstrates that those terms are not synonymous.

These statutes demonstrate that circuit courts have substantial supervisory authority over trusts, especially testamentary trusts.[15] Indeed, our Supreme Court has cited commentary that "[t]he principle of strict construction applies with compounding force to no-contest provisions in trusts" because trusts "usually last for an extended period of time and . . . vest ownership and control of the property in the hands of a trustee." *Hunter*, 298 Va. at 425 (quoting Gordon, *supra*, at 474). "The rising use of expansive trust forfeiture clauses is problematic because by disinheriting beneficiaries who seek oversight of this fiduciary relationship, the clauses threaten to forfeit trust altogether." *Id.* (quoting Gordon, *supra*, at 474). The qualification process is one process by which the circuit court exercises its oversight over the trust relationship.

In fact, Bakwin's will itself recognized that the circuit court would ultimately decide Schlesinger's qualifications and that qualification was not guaranteed. Although Bakwin "appoint[ed]" Schlesinger as trustee, he named Lazetera as the successor if Schlesinger was "unwilling *or unable to qualify*." (Emphasis added). One Texas Court of Appeals was faced with similar language in *Estate of Newbill*, 781 S.W.2d 727 (Tex. App. 1987). In that case, a beneficiary objected that the named executor of the estate "was not legally qualified to serve as executor." *Id.* at 729. The will had a no-contest clause that disinherited any beneficiary who "directly or indirectly contest[ed] or attack[ed] th[e] will or any of its provisions." *Id.* at 728. After explaining that forfeiture clauses are "strictly construed" in Texas, the court held that the no-contest clause did not bar the beneficiary's action. *Id.* at 729-30. In so concluding, the court relied on the fact that the testator had "expressly provided for the appointment of an alternate executor if [the named executor] should for any reason 'fail to qualify.'" *Id.* at 729. "Therefore," the court reasoned, "to hold that [the testator] intended to disinherit any beneficiary

---

[15] By contrast, there is no statutory requirement that inter vivos trustees qualify in court; such trustees usually may accept the role simply by undertaking performance. Code § 64.2-754(A); Code § 64.2-1403.

challenging the executor's qualifications . . . would be erroneous." *Id.*; *see also Ard v. Hudson*, No. 02-13-00198-CV, 2015 Tex. App. LEXIS 8727, at *21-22 (Aug. 20, 2015) ("We join our sister courts in holding that a beneficiary has an inherent right to challenge the actions of a fiduciary and does not trigger a forfeiture clause by doing so." (collecting cases)).

The same result is warranted here. Like Texas, we strictly construe forfeiture clauses and "will not lift [a] hand to aid a litigant in enforcing a forfeiture." *Hunter*, 298 Va. at 425 (quoting *Pence v. Tidewater Townsite Corp.*, 127 Va. 447, 459 (1920)). Rather, "[t]he heavy lifting must be done entirely by the unmistakable language of the drafter of the putative forfeiture provision." *Id.* Although Bakwin undoubtedly intended Schlesinger to serve as trustee, the issue before us is whether the language in the no-contest clause unmistakably conveys Bakwin's intent that the clause apply to the appellants' motion. That Bakwin specifically contemplated the possibility that Schlesinger may be unable to qualify illustrates that he did not intend to bar all challenges to Schlesinger's qualifications, let alone challenges based on conduct occurring after Bakwin's death. Moreover, the no-contest clause expressly barred conduct-based challenges to Bakwin's own acts or omissions but did not reference conduct-based challenges to other fiduciaries, such as Schlesinger. That fact further undermines Schlesinger's argument that Bakwin intended to prohibit the beneficiaries from challenging Schlesinger's and Lazetera's qualifications as trustee and successor trustee based on Schlesinger's conduct as executor.[16]

---

[16] We enforce no-contest clauses because of the "societal benefit of deterring . . . bitter family disputes." *Hunter*, 298 Va. at 424 (quoting *Rafalko*, 290 Va. at 402). Although it ultimately plays no role in the analysis, we note that the dispute over the trustees' qualifications was not such a dispute. We further note that it is exceedingly unlikely that Bakwin intended the no-contest clause to unravel his entire testamentary scheme by disinheriting every major beneficiary of his will in favor of family members to whom he otherwise left nothing. *See id.* (noting that "[m]any courts have struggled with the boundaries" of no-contest clauses because they "seek[] to protect the right of a testator 'to dispose of his property as he sees fit,' while not assuming that he wanted to disinherit anyone who questioned exactly how he intended to do so" (quoting *Womble*, 198 Va. at 532)).

The circuit court seemed to accept that the appellants could have challenged Schlesinger's qualifications without violating the no-contest clause had they done so on other grounds, such as by arguing that Schlesinger was "legally incompetent or legally disqualified." Schlesinger appeared to adopt that position at oral argument, stating that it would not have violated the no-contest clause had the appellants raised a "true question of fitness" in their motion to disqualify, because "competency . . . is always relevant." We discern no support in the no-contest clause or statutes for treating "competency" challenges differently.

The appellants filed their motion under Code § 64.2-1405(A), which allows a circuit court to appoint a trustee in place of one named in a will "on motion of any interested party, and upon satisfactory evidence of any of [eight] conditions." For instance, the court may appoint a different trustee when the named trustee dies, becomes "incapable of executing the trust on account of physical or mental disability or confinement in prison," "if residency is statutorily required, is no longer a resident of the Commonwealth," or "for any other reason ceases to be eligible to continue serving as trustee." *Id.* But the court may also appoint a different trustee than the named trustee "for any other good cause shown." Code § 64.2-1405(A)(viii). Code § 64.2-1405(A)(viii) does not explain what may constitute good cause to remove a trustee, but Code § 64.2-759 provides that a court may remove a trustee when "[t]he trustee has committed a serious breach of trust." Code § 64.2-759(B). According to the Restatement, such a breach is not limited to the trustee's conduct as trustee; rather "serious or repeated misconduct, *even unconnected with the trust itself*, may justify removal." Restatement (Third) of Trusts, *supra*, § 37 cmt. e (emphasis added). In short, the Code does not support the circuit court's distinction between legal incompetence and disqualification on other grounds. Certainly, the circuit court could conclude that the appellants had failed to demonstrate good cause for disqualification, but that does not mean that they were trying to "void, set aside, or nullify" a provision of the will.

At oral argument, Schlesinger asserted that the appellants were required to allow Schlesinger to qualify but could thereafter seek his removal without violating the no-contest clause.  If Bakwin intended such a procedure, clearer language was required.  *See* Restatement (Third) of Trusts, *supra*, § 37 cmt. a ("Courts are less hesitant to reject a designated trustee's appointment at the outset than to remove an acting trustee, because of the severity of the action and the disruption in administration that the latter entails.").  Here, the language is not "so clear and explicit as to leave no room for any other construction."  *Hunter*, 298 Va. at 424 (quoting *Davis*, 205 Va. at 169).  Accordingly, the circuit court erred by granting partial summary judgment on Schlesinger's claim that the appellants forfeited their rights to Bakwin's estate.

CONCLUSION

For the foregoing reasons, we vacate the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

# VIRGINIA:

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*   **25th**   *day of*   **November, 2025**.

Christopher Bakwin, et al.,                                                                     Appellants,

   against                    Record No. 0839-24-1
                              Circuit Court No. CL21-2276

Sanford J. Schlesinger, Executor in the Last Will and Testament
   dated December 14, 2016, of Michael Bakwin, Deceased,                          Appellee.

Upon a Petition for Rehearing

Before Judges AtLee, Lorish and Frucci

On November 5, 2025 came the appellants, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on October 21, 2025, and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the opinion rendered herein on October 21, 2025 is withdrawn, the mandate entered on that date is vacated, and this appeal will be reconsidered by the panel of judges that originally considered the matter.

On further consideration, in *Roanoke v. Blair*, 107 Va. 639 (1908), the Supreme Court said that "where the parties appealing and the parties not appealing stand upon the same ground, and their rights are involved in the same question, and equally affected by the same decree or judgment, this court will consider the whole case and settle the rights of the parties not appealing as well as those who bring up their case by appeal." *Id*. at 647.  The rule in *Blair* does not appear to have been cited since by any appellate case.  Since *Blair* was issued, the Rules of the Supreme Court of Virginia were overhauled in 1949, effective February 1950.  The parties are directed to file a supplemental brief addressing whether *Blair* conflicts with the modern Rules of the Supreme Court of Virginia and, if so, whether *Blair* remains good law.

The respective supplemental briefs must be limited to 7,000 words and must be electronically filed in the clerk's office of this Court by December 8, 2025, and served on opposing counsel.

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

Present:   Judges AtLee, Lorish and Frucci
Argued at Norfolk, Virginia


CHRISTOPHER BAKWIN, ET AL.

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0839-24-1                          JUDGE RICHARD Y. ATLEE, JR.
                                                        OCTOBER 21, 2025

SANFORD J. SCHLESINGER, EXECUTOR
 IN THE LAST WILL AND TESTAMENT
 DATED DECEMBER 14, 2016, OF
 MICHAEL BAKWIN, DECEASED


                    FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                              Carl E. Eason, Jr., Judge

            Raymond R. Granger (Glen M. Robertson; Denis Wiley; Karen R.
            Carnegie, Guardian ad litem for the minor beneficiaries; Granger &
            Associates, LLC; Wolcott Rivers Gates; McLaughlin & Stern, LLP;
            Karen Robins Carnegie, PLLC, on briefs), for appellants Peter
            Bakwin, Elizabeth Eason, Lisa Lindgren, Jean Bakwin, Lisa M.
            Morgan, Executor of the Estate of Patricia G. Morgan, and Tanna
            Clark.

            No brief or argument for appellant Christopher Bakwin, *pro se*.

            Robert W. McFarland (Michael Barker; Robert Loftin;
            McGuireWoods LLP, on brief), for appellee.


        The appellants are seven named beneficiaries of Michael Bakwin's ("Bakwin") 2016

will, which named Sanford J. Schlesinger as the executor of Bakwin's estate and the trustee of

various pre-residuary trusts created by the will.  Following a series of conflicts between the

appellants and Schlesinger arising during Schlesinger's tenure as executor, the appellants moved

in the circuit court to disqualify Schlesinger from serving as the trustee of any of the trusts.  The

circuit court denied that motion and found that it violated the will's no-contest clause, forfeiting

_____

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

the appellants' interests in the estate. Christopher Bakwin represents himself on appeal and did not file an opening brief or argue, waiving any challenge to the circuit court's judgment. The remaining appellants contend that the circuit court erroneously concluded that their motion to disqualify violated the no-contest clause. We agree. Accordingly, we dismiss Christopher Bakwin's appeal, vacate the judgment as to the other appellants, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND[1]

Bakwin had three children with his first wife: Peter Bakwin, Christopher Bakwin, and Elizabeth Eason.[2] He later divorced his first wife and married Doris Jean Winchester, who had four children from two previous marriages: James Polk (deceased), Jean Bakwin, Lisa Lindgren, and Patricia Morgan (deceased).[3] Starting in 1990, Bakwin and Winchester split their time between Virginia and New York. Winchester died in 2004.

Schlesinger, a New York lawyer, was Bakwin's estate-planning attorney and drafted the operative last will and testament in 2016. The will named Schlesinger as the executor of Bakwin's estate and directed him to sell Bakwin's artwork and distribute the proceeds equally to the appellants; distribute various personal and household effects equally to the appellants; and

---

[1] When reviewing a trial court's grant of summary judgment, we "accept[] as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

[2] Elizabeth Eason, who remarried during the proceedings, is sometimes referred to in the record as Elizabeth Johnson.

[3] The seven appellants in this case are Peter, Christopher, Elizabeth, Jean, Lisa Lindgren, James's daughter Tanna Clark, and Lisa Morgan in her capacity as executor of Patricia Morgan's estate.

distribute the Virginia house to Winchester's surviving children and her granddaughter Tanna Clark.[4]

In addition to those distributions, the will also established numerous pre-residuary trusts. First, it created a trust for the appellants' benefit funded with Bakwin's remaining generation-skipping-transfer-tax exemption. *See* 26 U.S.C. § 2631. Next, it devised $100,000 to each of Bakwin's and Winchester's great-grandchildren, to be held in trust for any great-grandchildren who were under 25 years old when Bakwin died.

The remaining estate was to be divided into equal shares for each of the appellants and their descendants. If none of Bakwin's children, Winchester's children, or Clark survived Bakwin, the will directed that Schlesinger distribute the remaining estate "to such persons and in such proportions" as would be distributable under Virginia law if Bakwin had died intestate.

In addition to naming Schlesinger as the executor, the will also "nominate[d], constitute[d] and appoint[ed]" him as the trustee of each of the pre-residuary trusts. It named Schlesinger's wife and law partner, Lianne Lazetera, as the successor executor and trustee should Schlesinger "die or shall be or become unwilling or unable to qualify and/or act or continue to act as Trustee."

Finally, the will contained a no-contest clause "revok[ing] any share or interest" in the estate "or in any trust created" by the will to any beneficiary "seeking to void, nullify or set aside all or any part of" the will in "any proceeding or action in any court."[5] The clause also provided

---

[4] The will also left $200,000 to a New York hospital and $120,000 spread among four other non-appellant beneficiaries.

[5] The full no-contest clause stated:

> In the event that any beneficiary, legatee and/or devisee under this
> my Last Will and Testament, commences, prosecutes, promotes,
> intervenes in, contributes to or voluntarily participates in, directly
> or indirectly, or counsels or aids any other person to commence,

for the disinheritance of any beneficiary who "makes a claim which is based upon any alleged act or omission by [Bakwin] individually, or in [his] capacity as trustee, executor, . . . or in any other capacity."

Bakwin died in December 2018, and the will was admitted to probate in Virginia later that month. Schlesinger qualified as the executor by court order, "made oath as the law directs," and recorded the required bond. The Commissioner of Accounts approved a total executor's commission of $450,000, plus reasonable attorney fees. Schlesinger hired his own law firm (Schlesinger, Lazetera & Auchincloss LLP, or "SLA") to assist with his executor duties and McGuireWoods LLP to assist with Virginia-related matters.

In April 2020, Schlesinger submitted to the Commissioner of Accounts an amended inventory showing estate assets of around $45,000,000 and a first accounting showing around $795,000 in legal fees paid to SLA and around $149,000 in legal fees paid to McGuireWoods.

---

prosecute, promote, intervene in, contribute to or voluntarily participate in, directly or indirectly, any proceeding or action in any court, agency, tribunal or other forum wherein such beneficiary, legatee and/or devisee or the counseled person (1) seeks to void, nullify or set aside all or any part of this my Last Will and Testament or (2) makes a claim which is based upon any alleged act or omission by me individually, or in my capacity as trustee, executor, partner, officer or director, or in any other capacity; then I revoke any share or interest in my estate given under this my Last Will and Testament or in any trust created under this my Last Will and Testament: (i) to the person seeking to void, nullify or set aside all or any part of this my Last Will and Testament and/or making the claim (the "claimant"), (ii) to the counseling person and (iii) to the issue of each such claimant and counseling person, and such share or interest shall be immediately disposed of as if such claimant or counseling person had then died without issue. These provisions shall remain in effect from my death until no trust hereunder is in existence and shall apply to each trust hereunder, whether or not the administration of my estate has been completed. If any provision of this Article "NINETEENTH" is held to be unenforceable or void for any reason, the remaining provisions shall be fully effective.

The first accounting also showed the Schlesinger had taken a partial executor commission of $100,000.

The appellants objected to the legal fees. In February 2021, following a hearing, the Commissioner of Accounts concluded that, at Schlesinger's direction, the estate had paid legal fees that "appeared to [be] extremely high and unreasonable." For example, the Commissioner noted that SLA had billed the estate $1,250 per hour for Schlesinger "to review the will he prepared." The Commissioner directed Schlesinger to restore around $485,000 in legal fees to the estate but allowed him to recharacterize $350,000 of those fees as the rest of his executor commission, reducing the amount of fees he had to return.[6]

In April 2021, the appellants moved to disqualify Schlesinger and Lazetera from serving as trustees of any of the pre-residuary trusts and asked the court to appoint a different trustee under Code § 64.2-1405(A)(viii).[7] In support of their motion, they relied on Schlesinger's alleged misconduct as executor, including the overbilling found by the Commissioner of Accounts; Schlesinger's "impaired judgment" in managing the estate's investment assets; and his delay in making preliminary distributions. The appellants also claimed that Schlesinger and Lazetera both had conflicts of interest because SLA would desire to recoup the restored attorney fees from the estate. Schlesinger responded that the allegations made in the motion were meritless and also moved to dismiss the motion as a violation of the will's no-contest clause.

Following a hearing, the circuit court dismissed the appellants' motion to disqualify. The court concluded that the motion violated the no-contest clause because it sought to void, set

---

[6] In May 2024, after the notice of appeal was filed in this case, the circuit court largely affirmed the Commissioner's decision over Schlesinger's objections but sustained the objections to a portion of the Commissioner's report that provided "further guidance" for future billing practices.

[7] Code § 64.2-1405(A)(viii) allows a circuit court to appoint a trustee other than one named in a will for "good cause shown" and "on motion of any interested party."

- 5 -

aside, or nullify the will's provision appointing Schlesinger as trustee and Lazetera as substitute trustee. The court summarized the appellants' objection to Schlesinger as based on mere "dislike" and "a personality conflict," which the court explained was "certainly not a basis to disqualify an individual as Trustee." In doing so, the court distinguished the appellants' arguments from a claim that Schlesinger was "legally incompetent or legally disqualified from being able to qualify as a Trustee." The court concluded that the appellants' violation of the no-contest clause rendered them without standing to challenge Schlesinger's and Lazetera's appointments and dismissed their motion to disqualify, making clear that its ruling was limited to standing. The court later denied the appellants' motion for reconsideration.

In September 2021, while the probate case was ongoing, Schlesinger filed a "complaint seeking advice and guidance" as to how to distribute Bakwin's remaining estate.[8] Schlesinger alleged that the appellants had violated the no-contest clause and should be treated as if they predeceased Bakwin, authorizing Schlesinger to distribute the estate's remaining assets to Bakwin's intestate heirs.[9] Schlesinger later moved for partial summary judgment on his claims that the appellants and their descendants had no rights or interests in Bakwin's estate, which the appellants opposed.

In November 2023, the court granted Schlesinger's motion for partial summary judgment. Consistent with its conclusion in the probate case, the court found that the no-contest

---

[8] The complaint seeking advice and guidance generated a docket number separate from the probate action, and it is the final order in the advice-and-guidance suit that is before us on appeal.

[9] Specifically, Schlesinger sought to distribute 1/3 of Bakwin's estate to the estate of Bakwin's sister; 1/3 to one of Bakwin's nieces; and 1/12 each to three remaining nieces and one remaining nephew.

- 6 -

clause was unambiguous and that the motion to disqualify violated the clause.[10]  Accordingly, the court found that the will revoked any share or interest in the estate held by the appellants and their minor beneficiaries.  The court ultimately entered a final order authorizing Schlesinger to distribute the remaining estate as set forth in his complaint for advice and guidance.[11]  The appellants now appeal.

## II.  ANALYSIS

### A.  *Christopher Bakwin has forfeited any challenge to the circuit court's judgment.*

An appellant must file the opening brief in this Court within 40 days of the record filing. Rule 5A:19(b)(2).  The opening brief must list assignments of error.  Rule 5A:20(c).  "Only assignments of error listed in the brief will be noticed by this Court.  If the brief does not contain assignments of error, the appeal will be dismissed."  Rule 5A:20(c)(1).  "If an appellant fails to file a brief in compliance with these Rules, this Court may dismiss the appeal."  Rule 5A:26.

On October 11, 2024, the appellants' attorneys moved to withdraw as to Christopher Bakwin, stating that Christopher wished to represent himself *pro se* going forward.  We granted that motion to withdraw on October 15, 2024, two days before counsel filed the opening brief on behalf of the other six appellants.  Unlike the guardian ad litem of the minor beneficiaries, who filed a Rule 5A:19(d) notice joining the appellants' brief, Christopher has not filed anything since he began representing himself.  Absent an opening brief, he has presented no assignments of error for us to consider, and his appeal must be dismissed.

---

[10] Schlesinger initially argued that the circuit court's ruling in the probate case collaterally estopped the appellants from arguing that they had not violated the no-contest clause but eventually abandoned that argument, as there had not yet been a final order in the probate case.  The circuit court did not apply collateral estoppel.  Schlesinger does not assert that the circuit court's probate ruling presents any procedural bar to the arguments the appellants now raise.

[11] Schlesinger had also sought guidance as to whether to recoup distributions previously made to the appellants; the circuit court ordered that he could not do so.

*B. The circuit court erred by finding that the remaining appellants violated the no-contest clause.*

"[W]hether a no-contest clause in a will has been triggered presents, on appellate review, a mixed question of law and fact." *Keener v. Keener*, 278 Va. 435, 441 (2009). Whether conduct "constitutes a contest or attempt to defeat a will depends upon the wording of the 'no contest' provision and the facts and circumstances of each particular case." *Id.* (quoting *Womble v. Gunter*, 198 Va. 522, 529 (1956)). "[A]pplying the language of a written document to an undisputed fact" is "a pure question of law, subject to review de novo on appeal." *Id.* at 442. We "review questions of statutory interpretation de novo." *Stahl v. Stitt*, 301 Va. 1, 8 (2022).

The appellants (minus Christopher) contend that the circuit court erred by concluding that their motion to disqualify Schlesinger and Lazetera as trustee and successor trustee violated the will's no-contest clause. They assert that a challenge to Schlesinger's and Lazetera's qualifications based on conduct occurring after Bakwin's death was not an attempt to "void, nullify or set aside" the will's provision "appointing" Schlesinger and Lazetera. We agree.[12]

"[N]o-contest provisions are simultaneously 'strictly enforced' and 'strictly construed.'" *Hunter v. Hunter*, 298 Va. 414, 424 (2020) (quoting *Rafalko v. Georgiadis*, 290 Va. 384, 402 (2015)). They are strictly enforced because "the common law honors 'the societal benefit of deterring the bitter family disputes that will contests frequently engender.'" *Id.* (quoting *Keener*, 278 Va. at 442). And they are strictly construed because Virginia "respect[s] the ancient maxim that 'equity abhors forfeitures.'" *Id.* (quoting *Jones v. Guaranty & Indem. Co.*, 101 U.S. 622, 628 (1879)). They are also strictly construed because "the testator, or a skilled draftsman acting

---

[12] "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Because we agree that the circuit court erred by failing to strictly construe the no-contest clause, we do not address the appellants' remaining arguments.

- 8 -

at his direction, has the opportunity to select the language that will most precisely express the testator's intent." *Keener*, 278 Va. at 443. "Strictly enforced" means that the provision will be "enforce[d] . . . without any wincing . . . concerning its alleged harshness or unfairness—so long as the testator or settlor clearly intended the forfeiture." *Hunter*, 298 Va. at 424. And "strictly construed" means "that the intent to forfeit must be *very* clear" and "[t]he language used must 'precisely express' the specific intent to cause a forfeiture." *Id.* (quoting *Keener*, 278 Va. at 442). "Strict enforcement cannot be justified by mere inferences of intent," and the instrument must use "terms so clear and explicit as to leave no room for any other construction." *Id.* (quoting *Davis v. Wickline*, 205 Va. 166, 169 (1964)).

"Wills are most frequently contested by beneficiaries who claim the document itself is invalid, either because the testator executed it without the requisite formalities, lacked the required capacity, was induced to sign the instrument against [his] free will, or revoked it in favor of some alternative disposition." Deborah S. Gordon, *Forfeiting Trust*, 57 Wm. & Mary L. Rev. 455, 474 (2015). "Typical testamentary forfeiture clauses seeking to prevent these types of claims therefore provide that anyone who challenges the will forfeits any interests received under it; if the contestant is successful, the will (including the clause) is invalidated." *Id.* at 461-62. "[A] typical forfeiture clause . . . [is] directed towards the most common types of will 'attacks,' which contest the *validity* of the testamentary instrument or any of its components." *Id.* at 464-65 (emphasis added).

The no-contest clause in Bakwin's will is just such a forfeiture clause. It applies to any proceeding "to void, nullify or set aside all or any part of" the will. To "void" something is to render it "of no *legal* effect." *Void*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). A court order that is void ab initio or has been voided by a superior court, for example, cannot legally bind the parties. *Hannah v. Commonwealth*, 303 Va. 106, 119-20, 123 (2024). Similarly,

to "set aside" means "to annul or vacate," while "nullify" means "to make legally null and void." *Set Aside*, *Black's Law Dictionary*, *supra*; *Nullify*, *Black's Law Dictionary*, *supra*. Thus, the no-contest clause applies to proceedings to invalidate the *legal* effects of the will or its provisions. But it does not necessarily apply to proceedings that merely threaten to undermine a provision's practical effects. Put another way, it prohibits attacks against the validity of the will or its provisions, but it does not prohibit beneficiaries from participating in proceedings that are collateral to issues raised in the will.

The appellants did not challenge the validity of any provision in Bakwin's will but merely sought to intervene in a separate qualification process that the Code places squarely within the circuit court's authority. *See Estate of Aaron Rimland*, 2003 N.Y. Misc. LEXIS 675, at *6 (N.Y. Surrogate's Ct. June 3, 2003) ("In terrorem clauses are designed to prevent attacks on the validity of a will and it has been held that they do not come into play where the issue is whether a fiduciary nominated in the will is qualified to serve in that capacity."). "Before proceeding to act as trustee," a trustee named in a will must "qualify and give bond before the proper circuit court or clerk." Code § 64.2-1401(B); *see also* Code § 64.2-1400(E) (contemplating that "less than all the trustees named in the will" may qualify and limiting the trust powers to only the trustees who have qualified). The court "where the will has been probated" has "exclusive jurisdiction for the qualification of the trustee." Code § 64.2-1401(A); *see also* Code § 64.2-1400(A) (providing that the clerk of a circuit court or a duly qualified deputy "*may* qualify any trustee named in a will, deed, or other writing, and require and take from them the necessary bonds" (emphasis added)).[13] Qualification places the trustee under the

---

[13] The difference between appointment and qualification is further illustrated in Code § 64.2-1400(B), which allows the clerk or deputy to "appoint and qualify an individual or a corporation" as trustee if certain conditions are met. "When the General Assembly uses two different terms in the same act, it is presumed to mean two different things." *Sauder v. Ferguson*, 289 Va. 449, 457 (2015) (quoting *Forst v. Rockingham Poultry Mktg. Coop.*, 222 Va.

supervision of the commissioners of accounts, who "have general supervision of all fiduciaries admitted to qualify in the court." Code § 64.2-1200(A).

Moreover, a "court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law." Code § 64.2-710(A). The judicial proceeding "may relate to any matter involving the trust's administration." Code § 64.2-710(C). Notably, a beneficiary "may petition to the court to remove a trustee, or a trustee may be removed by the court on its own initiative." Code § 64.2-759(A). According to the Third Restatement of Trusts, the same reasons that may justify a court removing a trustee may also justify the court refusing the trustee's appointment in the first place. Restatement (Third) of Trusts, § 37 cmt. A (2012).

These statutes demonstrate that circuit courts have substantial supervisory authority over trusts, especially testamentary trusts.[14] Indeed, our Supreme Court has cited commentary that "[t]he principle of strict construction applies with compounding force to no-contest provisions in trusts" because trusts "usually last for an extended period of time and . . . vest ownership and control of the property in the hands of a trustee." *Hunter*, 298 Va. at 425 (quoting Gordon, *supra*, at 474). "The rising use of expansive trust forfeiture clauses is problematic because by disinheriting beneficiaries who seek oversight of this fiduciary relationship, the clauses threaten to forfeit trust altogether." *Id.* (quoting Gordon, *supra*, at 474). The qualification process is one process by which the circuit court exercises its oversight over the trust relationship.

---

270, 278 (1981)). The General Assembly's decision to use only "qualify" in subsection (A) and "appoint and qualify" in subsection (B) demonstrates that those terms are not synonymous.

[14] By contrast, there is no statutory requirement that inter vivos trustees qualify in court; such trustees usually may accept the role simply by undertaking performance. Code § 64.2-754(A); Code § 64.2-1403.

In fact, Bakwin's will itself recognized that the circuit court would ultimately decide Schlesinger's qualifications and that qualification was not guaranteed. Although Bakwin "appoint[ed]" Schlesinger as trustee, he named Lazetera as the successor if Schlesinger was "unwilling *or unable to qualify*." (Emphasis added). One Texas Court of Appeals was faced with similar language in *Estate of Newbill*, 781 S.W.2d 727 (Tex. App. 1987). In that case, a beneficiary objected that the named executor of the estate "was not legally qualified to serve as executor." *Id.* at 729. The will had a no-contest clause that disinherited any beneficiary who "directly or indirectly contest[ed] or attack[ed] th[e] will or any of its provisions." *Id.* at 728. After explaining that forfeiture clauses are "strictly construed" in Texas, the court held that the no-contest clause did not bar the beneficiary's action. *Id.* at 729-30. In so concluding, the court relied on the fact that the testator had "expressly provided for the appointment of an alternate executor if [the named executor] should for any reason 'fail to qualify.'" *Id.* at 729. "Therefore," the court reasoned, "to hold that [the testator] intended to disinherit any beneficiary challenging the executor's qualifications . . . would be erroneous." *Id.*; *see also Ard v. Hudson*, No. 02-13-00198-CV, 2015 Tex. App. LEXIS 8727, at *21-22 (Aug. 20, 2015) ("We join our sister courts in holding that a beneficiary has an inherent right to challenge the actions of a fiduciary and does not trigger a forfeiture clause by doing so." (collecting cases)).

The same result is warranted here. Like Texas, we strictly construe forfeiture clauses and "will not lift [a] hand to aid a litigant in enforcing a forfeiture." *Hunter*, 298 Va. at 425 (quoting *Pence v. Tidewater Townsite Corp.*, 127 Va. 447, 459 (1920)). Rather, "[t]he heavy lifting must be done entirely by the unmistakable language of the drafter of the putative forfeiture provision." *Id.* Although Bakwin undoubtedly intended Schlesinger to serve as trustee, the issue before us is whether the language in the no-contest clause unmistakably conveys Bakwin's intent that the clause apply to the appellants' motion. That Bakwin specifically contemplated the possibility

that Schlesinger may be unable to qualify illustrates that he did not intend to bar all challenges to Schlesinger's qualifications, let alone challenges based on conduct occurring after Bakwin's death. Moreover, the no-contest clause expressly barred conduct-based challenges to Bakwin's own acts or omissions but did not reference conduct-based challenges to other fiduciaries, such as Schlesinger. That fact further undermines Schlesinger's argument that Bakwin intended to prohibit the beneficiaries from challenging Schlesinger's and Lazetera's qualifications as trustee and successor trustee based on Schlesinger's conduct as executor.[15]

The circuit court seemed to accept that the appellants could have challenged Schlesinger's qualifications without violating the no-contest clause had they done so on other grounds, such as by arguing that Schlesinger was "legally incompetent or legally disqualified." Schlesinger appeared to adopt that position at oral argument, stating that it would not have violated the no-contest clause had the appellants raised a "true question of fitness" in their motion to disqualify, because "competency . . . is always relevant." We discern no support in the no-contest clause or statutes for treating "competency" challenges differently.

The appellants filed their motion under Code § 64.2-1405(A), which allows a circuit court to appoint a trustee in place of one named in a will "on motion of any interested party, and upon satisfactory evidence of any of [eight] conditions." For instance, the court may appoint a different trustee when the named trustee dies, becomes "incapable of executing the trust on

_____

[15] We enforce no-contest clauses because of the "societal benefit of deterring . . . bitter family disputes." *Hunter*, 298 Va. at 424 (quoting *Rafalko*, 290 Va. at 402). Although it ultimately plays no role in the analysis, we note that the dispute over the trustees' qualifications was not such a dispute. We further note that it is exceedingly unlikely that Bakwin intended the no-contest clause to unravel his entire testamentary scheme by disinheriting every major beneficiary of his will in favor of family members to whom he otherwise left nothing. *See id.* (noting that "[m]any courts have struggled with the boundaries" of no-contest clauses because they "seek[] to protect the right of a testator 'to dispose of his property as he sees fit,' while not assuming that he wanted to disinherit anyone who questioned exactly how he intended to do so" (quoting *Womble*, 198 Va. at 532)).

account of physical or mental disability or confinement in prison," "if residency is statutorily required, is no longer a resident of the Commonwealth," or "for any other reason ceases to be eligible to continue serving as trustee." *Id.* But the court may also appoint a different trustee than the named trustee "for any other good cause shown." Code § 64.2-1405(A)(viii). Code § 64.2-1405(A)(viii) does not explain what may constitute good cause to remove a trustee, but Code § 64.2-759 provides that a court may remove a trustee when "[t]he trustee has committed a serious breach of trust." Code § 64.2-759(B). According to the Restatement, such a breach is not limited to the trustee's conduct as trustee; rather "serious or repeated misconduct, *even unconnected with the trust itself*, may justify removal." Restatement (Third) of Trusts, § 37 cmt. e (2012) (emphasis added). In short, the Code does not support the circuit court's distinction between legal incompetence and disqualification on other grounds. Certainly, the circuit court could conclude that the appellants had failed to demonstrate good cause for disqualification, but that does not mean that they were trying to "void, set aside, or nullify" a provision of the will.

At oral argument, Schlesinger asserted that the appellants were required to allow Schlesinger to qualify but could thereafter seek his removal without violating the no-contest clause. If Bakwin intended such a procedure, clearer language was required. *See* Restatement (Third) of Trusts, § 37 cmt. a (2012) ("Courts are less hesitant to reject a designated trustee's appointment at the outset than to remove an acting trustee, because of the severity of the action and the disruption in administration that the latter entails."). Here, the language is not "so clear and explicit as to leave no room for any other construction." *Hunter*, 298 Va. at 424 (quoting *Davis*, 205 Va. at 169). Accordingly, the circuit court erred by granting partial summary judgment on Schlesinger's claim that the appellants forfeited their rights to Bakwin's estate.

CONCLUSION

For the foregoing reasons, we dismiss Christopher Bakwin's appeal, vacate the circuit court's judgment as to the other six appellants, and remand for further proceedings consistent with this opinion.

*Dismissed in part, vacated in part, and remanded.*